[No. E009985. Fourth Dist., Div. Two. Mar. 1, 1993.]

PACIFIC STATES ENTERPRISES, INC., Plaintiff and Appellant, v. THE CITY OF COACHELLA et al., Defendants and Respondents.

[Opinion certified for partial publication.*]

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I and III of the Discussion.

1416

## COUNSEL

Marvin H. Weiss for Plaintiff and Appellant.

Richards, Watson & Gershon, Robert M. Goldfried, William L. Strausz and David A. Buchen for Defendants and Respondents.

## OPINION

**TIMLIN J.**—The plaintiff in this matter, Pacific States Enterprises, Inc. (Pacific), appeals from the dismissal of its first amended complaint as against two defendants pursuant to section 581, subdivision (f)(1) and (2) of the Code of Civil Procedure after their demurrers to the first amended complaint were sustained.[1] On appeal, Pacific contends that: (1) With regard to the defendant City of Coachella (City)—(a) the trial court erred in sustaining the City's demurrer to the first amended complaint and (b) even if the trial court was correct in sustaining the City's demurrer to the first

---

[1]Unless otherwise indicated, all statutory citations refer to the Code of Civil Procedure.

amended complaint, the trial court erred in sustaining that demurrer without leave to amend; and (2) with regard to the individual defendant, Les Nelson (Nelson)—the trial court erred in sustaining the demurrer to the first amended complaint.

We shall conclude that the trial court's rulings were legally correct and, consequently, we shall affirm the dismissals entered below.

### Statement of Factual and Procedural Background

As pled in Pacific's first amended complaint, the general gist of the facts underlying the within action are as follows:

(1) Pacific and the City entered into an oral agreement pursuant to which the City would make available to Pacific a roughly 19-acre parcel and Pacific (having obtained development approvals from the City) would develop an "auto center and mall" on the parcel and would be given, as its own, a portion of the parcel;

(2) In reliance on various promises, representations, commitments and warranties made by the City through its employees to Pacific with regard to their oral agreement, Pacific expended large sums of money to carry out the preliminary stages of its obligations under the agreement, including the preparation of studies and plans regarding the proposed development; and

(3) The City, without notice or good cause, refused to deal with Pacific in good faith or to meet the terms of its obligations under the agreement in any fashion—all to Pacific's loss and damage.

Pursuant to the Government Tort Claims Act, Pacific filed a claim against the City for its alleged losses (in excess of $5 million) resulting from the City's failure to fully perform under the terms of the alleged oral contract. The City denied the claim, and Pacific filed its first complaint. This initial pleading contained three causes of action—breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud and deceit. The complaint named three defendants—the City, Otis Clasby (a former City manager of the City who was involved, at least as a correspondent, in the City's dealings with Pacific) and Nelson (who replaced Clasby as the City manager while the City-Pacific dealings were still ongoing). This original complaint did not specify which of the causes of action were pled against which of the defendants.

The City and Nelson demurred to Pacific's first complaint:[2] As to the first cause of action (breach of contract), the trial court sustained the demurrers on the ground that the oral contract, as therein alleged, was apparently violative of the statute of frauds; as to the second cause of action (breach of covenant of good faith and fair dealing), the trial court sustained the demurrers on the ground that no valid cause of action could sound on the asserted theory in the absence of a valid contract; and as to the third cause of action (fraud and deceit), the trial court overruled the demurrers, which demurrers had been based on the ground that the complaint failed to sufficiently plead the particulars of the alleged fraud/deceit.

Pacific thereafter filed a first amended complaint. The amended complaint differed from the original complaint in at least three material respects: (1) The amended complaint affirmatively alleged certain "factors" (part performance, estoppel/detrimental reliance, and unjust enrichment) which purportedly "lifted" the alleged oral contract "out from under" the statute of frauds; (2) the amended complaint attached and incorporated copies of five different documents (exhibits "A" through "E") which, according to the amended complaint, "clearly evidence[d] the existence and material terms of the oral agreement between plaintiff and Defendant City of Coachella"; and (3) the first and second causes of action of the first amended complaint (hereinafter referred to collectively as "the contract related causes of action") were asserted only against the City and "Does 1 through 20" (and not against the individually named defendants), while the third cause of action (fraud and deceit) was asserted against all of the defendants.

The City and Nelson demurred to the first amended complaint. As to the first cause of action, the City demurred on the ground that the alleged oral contract violated the statute of frauds and also on the ground that the amended complaint's description of the terms of the alleged oral contract, together with the incorporated documentation, did not show the City to be a party to the contract. As to the second cause of action, the City demurred on the ground that the second cause of action was legally dependent on the first cause of action, in that there can be no tortious (or, for that matter, nontortious) breach of a contract unless there is a contract—and the first cause of action did not allege the existence of a valid contract between it and Pacific.

■■■■ Finally, as to the third cause of action, the City and Nelson demurred on the grounds that they were statutorily immune from liability

---

[2]Although Clasby was named as a defendant in both the original and the amended complaints, it is not clear that he was ever served with a summons and either of the complaints.

with respect to the alleged fraud, that plaintiff was without legal right to obtain punitive damages (which were prayed for with respect to the third cause of action) either from the City or from Nelson, and that the amended complaint disclosed that there was no contractual relationship between the City and Pacific upon which a claim for fraud could be said to rest.[3]

Without stating the specific grounds upon which it was basing its rulings, the trial court thereafter sustained the City's demurrers to the contract related causes of action without leave to amend, and sustained the demurrers to the third cause of action without leave to amend as to the City and with 20 days' leave to amend as to Nelson. Pacific thereafter failed to amend its complaint within 20 days with respect to its fraud/deceit cause of action against Nelson. The City and Nelson then moved the trial court for a dismissal of the within action with prejudice: (1) Insofar as the case against the City was concerned, pursuant to section 581, subdivision (f)(1) ("The court may dismiss the complaint as to that defendant . . . after a demurrer to the complaint is sustained without leave to amend and either party moves for dismissal."); and (2) insofar as the case against Nelson was concerned, pursuant to section 581, subdivision (f)(2) ("The court may dismiss the complaint as to that defendant . . . after a demurrer to the complaint is sustained with leave to amend, the plaintiff fails to amend it within the time allowed by the court and either party moves for dismissal.")

The trial court granted the City's and Nelson's motion for dismissal with prejudice, and Pacific's appeal from that order of dismissal ensued. (§ 581d.)

Additional facts will be referred to, as needed, in the discussion which follows.

---

[3]Although it is not a significant issue on appeal, we note the following concerning the fact that the City and Nelson demurred to the third cause of action of the first amended complaint notwithstanding that their demurrers to an essentially identical third cause of action of the original complaint (based on several largely identical grounds) had been overruled: "The interests of åll parties are advanced by avoiding a trial and reversal for defect in pleadings. The objecting party is acting properly in raising the point at his first opportunity, by general demurrer. If the demurrer is erroneously overruled, he is acting properly in raising the point again, at his next opportunity. If the trial judge made the former ruling himself, he is not bound by it. [Citation.] And, if the demurrer was overruled by a different judge, the trial judge is equally free to reexamine the sufficiency of the pleading. [Citations.]" (*Ion Equipment Corp.* v. *Nelson* (1980) 110 Cal.App.3d 868, 877 [168 Cal.Rptr. 361]—discussing the analogous situation of granting a motion for judgment on the pleadings following a prior overruling of a demurrer with respect to the same pleading; see Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 1992) § 7:140, at p. 7-37.) Thus, the City and Nelson were entirely within their rights to demur to the third cause of action of the first amended complaint notwithstanding their prior unsuccessful efforts to demur to the third cause of action of the original complaint.

DISCUSSION

I.

THE STANDARD OF REVIEW*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

II.

THE SUSTAINING OF THE CITY'S DEMURRER TO THE FIRST AND SECOND
CAUSES OF ACTION WITHOUT LEAVE TO AMEND

A.  *Legal Correctness of Sustaining Demurrer.*

In discussing the appropriateness of the trial court's having sustained the City's demurrer to Pacific's first amended complaint, it is preferable to discuss separately the City's demurrer as it related to the contract related causes of action and the City's demurrer as it related to the third cause of action—the fraud/deceit cause of action. This is so because the issue of the validity of the City's demurrer to the fraud/deceit cause of action is intertwined with the issue of the validity of Nelson's individual demurrer to the fraud/deceit cause of action—and, consequently, those two issues should be taken up together. Here, we address only the City's demurrer as it related to the contract related causes of action.

As noted above, there were various documentary exhibits, including exhibits "A" through "E," which were attached to, and incorporated into, Pacific's first amended complaint. Paragraph 26 of Pacific's first amended complaint declared: "Exhibits 'A' through 'E' hereto clearly evidence the existence and material terms of the oral agreement between plaintiff and Defendant City of Coachella . . . ." A brief description of each of these five exhibits follows:

(1) Exhibit "A" was a letter to one of Pacific's officers from the City Manager, which letter was denominated a "Letter of Intent Between *Coachella Redevelopment Agency* and [Pacific]." The "cc" on this letter indicated that it was being copied to "Bill Strausz, *Redevelopment* Attorney." (Italics added.)

---

*See footnote, *ante*, page 1414.

(2) Exhibit "B" was a letter to the same Pacific officer from the above named "Redevelopment Attorney." In that letter, the following relevant statements were made: (i) "The owners of the 18.38 acre site . . . have orally agreed to sell that site to *the Coachella Redevelopment Agency*[;]" (ii) "That offer will be presented to *the Redevelopment Agency* . . . ;" (iii) At the meeting on Tuesday, the *Agency* will also consider the exclusive negotiating agreement which you provided . . . ;" and (iv) "[a]ssuming that *the Redevelopment Agency* will be entering into an escrow for the site . . . ." (Italics added.) A copy of the referenced "negotiating agreement" (apparently provided/drafted by Pacific's officer) was attached to this letter. This proposed agreement clearly states that it is by and between Pacific and *"the Redevelopment Agency of the City of Coachella,* a public body, corporate and politic, *created and authorized to transact business* pursuant to Part 1 of Division 24 of the Health and Safety Code of the State of California (the 'Community Redevelopment Law')." (Italics added.)

(3) Exhibit "C" was a "fax" from the City Manager to Pacific's officer stating in part: "Yesterday *the Redevelopment Agency* with approval, and the sellers of said property, *did sign the agreement* for 19 acres to sell and purchase same *for your venture.*" (Italics added.)

(4) Exhibit "D" was a letter from the City Manager to the Riverside County Economic Development Corporation. The letter contains the following relevant statement: "Since November 1987 *the City Redevelopment Agency* has been working with Pacific States Enterprises, Inc. in Riverside." (Italics added.)

(5) Exhibit "E" was a letter to one of Pacific's officers from the City Manager concerning the coordinating of escrow closure with the various other approvals and agreements related to the Agency/Pacific agreement. There was no mention of the Coachella Redevelopment Agency in this letter.

■ It is abundantly clear from even a cursory review of Pacific's exhibits "A" through "E" that the alleged oral contract upon which Pacific's first and second causes of action were based was a contract between Pacific and the Coachella Redevelopment Agency—*not* the City of Coachella. Consequently, it would appear on the face of it that Pacific named the wrong governmental entity as a defendant in its action—and that the trial court was correct in sustaining the City's demurrer to the contract related causes of action.

Pacific argues forcefully that the City and the Redevelopment Agency are one and the same governmental entity and that the pleading allegations as to

one have full force and effect as to the other. In support of this argument, Pacific cites *Nolan* v. *Redevelopment Agency* (1981) 117 Cal.App.3d 494 [172 Cal.Rptr. 797]. In *Nolan*, the court was dealing with a "taxpayer suit" (§ 526a) which had been brought against a local redevelopment agency to challenge the propriety of a sale of property by the agency. The plaintiff in that action amended the complaint to add the local city and city council as "Doe defendants" to the action, but the trial court later granted the motion of the city/city council to strike those amendments. Thereafter, the trial court dismissed the action in its entirety. On appeal, the Court of Appeal was required to address the interrelated issues of whether the city/city council were indispensable parties to the action and, if so, whether the trial court's removal of those parties from the action had been correct (thus requiring the dismissal of the action). The Court of Appeal concluded that there had been no defect of parties, stating: "The city council is the redevelopment agency. Although the council may conduct some of its activities using the name of 'Redevelopment Agency,' it is none the less the city council. The council, albeit referred to by its other title, has been a party defendant in this action from the beginning." (117 Cal.App.3d at p. 501.)[6]

*Nolan*'s conclusion that the redevelopment agency and the city council which were there involved were "one and the same" insofar as the joinder of parties in that action was concerned was based on two distinct factors: (1) Section 33003 of the Health and Safety Code (a part of the Community Redevelopment Law—pt. 1 of div. 24 of the Health & Saf. Code, beginning with § 33000) defines an "agency" as "a redevelopment agency created by this part or its predecessor, *or a legislative body which has elected to exercise the powers granted to an agency by this part*" (italics added; see also § 33200, subd. (a) of the Health & Saf. Code); and (2) the city council in that action had, by appropriate legislative action, declared itself to be the local redevelopment agency.

*Nolan*'s conclusion as to the "sameness" of the redevelopment agency and the city/city council in the context of that case was reached without citation to supporting case authority, is directly contrary to other, long-established case authority, and is based on a misunderstanding of the meaning and significance of the Health and Safety Code provisions which it relied on in reaching its conclusion. We decline to follow it or its "progeny" (cf. fn. 6).

---

[6]This same general sentiment is expressed in another opinion which specifically cites *Nolan*. In *Oceanside Marina Towers Assn.* v. *Oceanside Community Development Com.* (1986) 187 Cal.App.3d 735 [231 Cal.Rptr. 910], the Court of Appeal stated: "[H]ere, the Commission is the Oceanside City Council and acts as the alter ego of the City." (187 Cal.App.3d at p. 741.)

The basic misunderstanding which underlies *Nolan*'s analysis is simply this: *Nolan* mistakenly concluded that if the same legislative body acts in two different governmental capacities, representing two different governmental entities, there must still necessarily be only *one* legislative body and, consequently, only *one* (for all intents and purposes) governmental entity. Not so—and the above cited sections of the Health and Safety Code, properly construed, do not compel agreement with *Nolan*'s conclusion in that regard. ■ We base our rejection of *Nolan* on the following:

(1) Redevelopment agencies are governmental entities which exist by virtue of state law and are separate and distinct from the communities in which they exist. Health and Safety Code section 33100 states: "There is in each community a public body, corporate and politic, known as the redevelopment agency of the community." Health and Safety Code section 33125 states: "An agency may: (a) Sue and be sued. . . . (c) Make and execute contracts and other instruments necessary or convenient to the exercise of its powers."

(2) General law cities (such as the City of Coachella), on the other hand, exist by virtue of an entirely different body of law. Government Code section 34102 states: "Cities organized under the general law shall be 'general law cities.' "

(3) Well-established and well-recognized case law holds that the mere fact that the same body of officers acts as the legislative body of two different governmental entities does *not* mean that the two different governmental entities are, in actuality, one and the same. (See: *County of L. A.* v. *Continental Corp.* (1952) 113 Cal.App.2d 207, 219-220 [248 P.2d 157]; *Riverside etc. Dist.* v. *Jos. W. Wolfskill Co.* (1957) 147 Cal.App.2d 714, 717-718 [306 P.2d 22]. We note that *Nolan* failed to discuss or attempt to distinguish either of these opinions.) This principle was perhaps stated most succinctly in the *County of L. A.* v. *Continental Corp.* (*supra*) opinion: "Thus, the Board of Supervisors of the Los Angeles County Flood Control District [which is comprised of the same legislative body of persons as the Board of Supervisors of the County of Los Angeles], when acting as such, are not county officers, but state officers, and any action taken by such board is not action by the Board of Supervisors of the County of Los Angeles, as such, or of the county of Los Angeles." (113 Cal.App.2d at p. 220; bracketed material added.)

(4) Thus, the Health and Safety Code sections to which the *Nolan* opinion had reference, properly understood, mean nothing more than that the legislative body which exercises local governmental power within a given jurisdictional territory (a community) may, if it so chooses, also exercise the

powers of the redevelopment agency in that territory.[7] *But*: When a "dual capacity legislative body" acts as the governing board of a redevelopment agency, it is the redevelopment agency which is acting by and through that legislative body; and when that same legislative body acts as the governing body of the "community" (i.e., city) over which it exercises local governmental powers, it is the "community" which is acting by and through that legislative body. The redevelopment agency and the "community" are *not* one and the same governmental entity. The redevelopment agency, by state law, exists "in each community" with certain limited powers and functions (Health & Saf. Code, §§ 33020, 33100, 33120)—it is not the same entity as the community *within which* it exists. The mischief which would be done if it were otherwise is apparent. As argued by the City in its respondent's brief: "Permitting a damages suit against the City for an alleged breach of contract by the Redevelopment Agency is as improper as allowing a redevelopment agency to take [city] funds earmarked for welfare assistance and spend it on a new commercial development." Although the City's hypothetical example may be a bit extreme, we agree in principle with the concern which it highlights.

█ As to Pacific's second cause of action, we note simply that we agree with the trial court' s apparent conclusion that a cause of action for a breach of the implied contractual covenant of good faith and fair dealing cannot be stated in the absence of a valid contract to which the covenant appertains. Thus, the failure of Pacific to allege a valid Pacific-City contract necessarily precludes Pacific's being able to allege a breach of the implied contractual covenant of good faith and fair dealing in such a contract. (With respect to a similar issue involving an allegation of a bad faith denial of a contract's existence, see *Isaac v. A & B Loan Co.* (1988) 201 Cal.App.3d 307, 313 [247 Cal.Rptr. 104].)

### B. Appropriateness of Sustaining Demurrer Without Leave to Amend.

█ Given all of the above, the trial court properly sustained the City's general demurrer to the first and second causes of action of Pacific's first

---

[7]As defined in the Health and Safety Code: (1) " 'Legislative body' means the city council . . . of the community" (Health & Saf. Code, § 33007); and (2) " 'Community' means a city . . . which is incorporated or which otherwise exercises some local governmental powers" (Health & Saf. Code, § 33002).

amended complaint (the contract related causes of action) without leave to amend. ■■ ■ ■ Even assuming the existence of a valid oral contract between Pacific and a public body, Pacific's own pleading clearly showed that it was the Coachella Redevelopment Agency, and not the City itself, which was the alleged contracting governmental entity—and no number of amendments to Pacific's pleadings could possibly change that fact.[8] Inasmuch as the City demonstrably was not a party to the alleged oral contract which formed the underlying basis for the "contract related" causes of action in Pacific's first amended complaint, the City's demurrer as to those causes of action was properly sustained without leave to amend. (As stated in *Chitwood* v. *County of Los Angeles* (1971) 14 Cal.App.3d 522, at p. 525 [92 Cal.Rptr. 441]: "Since [a governmental entity which was closely aligned with and related to, but separate and distinct from, the governmental entity which was actually named as a defendant in the action] was not named in the complaint except as one of 'Does I through X inclusive' *it simply was not a defendant* (unless it voluntarily appeared) . . . ." [Italics added.])[9]

Insofar as the City is concerned, this leaves only the issue of whether the trial court properly sustained its (the City's) demurrer to Pacific's third cause of action (for fraud/deceit) without leave to amend. We take up this issue below, in conjunction with our discussion of the trial court's having sustained Nelson's individual demurrer to the third cause of action of Pacific's first amended complaint.

### III.

### THE SUSTAINING OF THE CITY'S AND NELSON'S DEMURRER TO THE THIRD CAUSE OF ACTION*

. . . . . . . . . . . . . . . . . . . . . . . . . .

---

[8]"Where a written instrument is unambiguous and incorporated by reference into a complaint, any allegations in the pleading inconsistent with the incorporated writing may be stricken." (*Nichols* v. *Canoga Industries* (1978) 83 Cal.App.3d 956, 965 [148 Cal.Rptr. 459].)

[9]Before leaving this issue entirely, we note simply that at no point does it appear that Pacific attempted to amend either of its complaints so as to substitute the Coachella Redevelopment Agency in place of one of the designated "Doe defendants." Whether Pacific would have been successful in such an attempt is an issue on which we express no opinion.

*See footnote, *ante*, page 1414.

## Disposition

The dismissals entered below are affirmed in full.

Ramirez, P. J., and Dabney, J., concurred.

Appellant's petition for review by the Supreme Court was denied June 10, 1993.