[No. B061614. Second Dist., Div. Five. Mar. 31, 1993.]

LONG BEACH COMMUNITY REDEVELOPMENT AGENCY, Plaintiff and Respondent, v. DAVID MORGAN et al., Defendants and Appellants.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, III and IV.

**COUNSEL**

James Morgan and David Morgan, in pro. per., for Defendants and Appellants.

John R. Calhoun, City Attorney, Hahn & Hahn, David K. Robinson and Charles J. Greaves for Plaintiff and Respondent.

## OPINION

GRIGNON, J.—Appellants David Morgan and James Morgan seek to reverse a judgment, following an eminent domain trial, in favor of respondent Long Beach Community Redevelopment Agency (the Agency). The judgment determined that the Agency had a right to lawfully take appellants' property by eminent domain and fixed the amount of compensation at $193,000. Appellants maintain that: the Agency's governing body did not adopt the requisite resolution of necessity and, therefore, the trial court failed to obtain jurisdiction in the matter; the Agency may not condemn for redevelopment purposes because such right was not reserved in a federal patent proceeding; and their constitutional and statutory rights were violated. In the published portion of this opinion, we conclude the resolution of necessity, which is a precondition to an eminent domain proceeding, was adopted by the governing body of the Agency within the meaning of Code of Civil Procedure sections 1245.210 and 1245.220. In the unpublished portion of this opinion, we resolve the remaining issues and affirm the judgment.

### FACTS AND PROCEDURAL BACKGROUND

The record reveals the following facts. The subject property is located in downtown Long Beach. The Agency was created in October 1961, by the Long Beach City Council (the City Council) pursuant to Health and Safety Code section 33100 et seq. (the Community Redevelopment Law). On June 17, 1975, the City Council enacted an ordinance by which the Agency's Long Beach Downtown Redevelopment Plan (the Plan) was adopted. The ordinance recited that the purpose of the Plan was to "eliminate the conditions of blight existing in the project area" and the "project area is a blighted area, the redevelopment of which is necessary to effectuate the public purposes declared in the Community Redevelopment Law of the State of California." The Plan anticipated that the central business district of the project area would be redeveloped to include, among other projects, a regional shopping center, city hall, county building and museum of art.

On February 27, 1989, the Agency's board of commissioners enacted a resolution of necessity authorizing the Agency to commence an eminent domain action to acquire certain property in the project area (including the subject property). The Agency filed its complaint in eminent domain on June 1, 1989. At the time the complaint was filed, the subject property was owned by numerous individuals and organizations. However, by the time of the trial which gives rise to this appeal, only appellants had not sold their 16.99387 percent interest in the subject property to the Agency.

The first pretrial conference was held on June 15, 1990. The trial court issued a pretrial conference order setting a trial date and establishing a discovery cutoff date of August 15, 1990. The pretrial conference order also required the parties to exchange valuation data, including appraisals of the subject property. Appellants unsuccessfully moved for a continuance of the trial. Appellants then failed to exchange valuation data as required by the pretrial order. As a result, the trial court issued an order prohibiting appellants from presenting valuation evidence at trial.

After considerable pretrial litigation,[1] the first phase of trial on the "right to take" issue was conducted over three days beginning on November 26, 1990. On February 15, 1991, the trial court entered its order on appellants' objection to right to take and found that the Agency "has the right to acquire [the subject property] by eminent domain." Appellants' motions for new trial and "dismissal" were denied. On June 10, 1991, the valuation phase of the trial was conducted. It appears from the record that appellant James Morgan failed to appear and appellant David Morgan left the proceedings prior to the presentation of evidence. Based solely upon valuation evidence provided by the Agency, the trial court valued appellants' interest in the subject real property at $193,000.

Prior to trial, the Agency had made an ex parte application for prejudgment possession of appellants' fractional interest in the subject property pursuant to section 1255.410 of the Code of Civil Procedure. That application was granted on the date of application and was served on appellants. Appellants were unsuccessful in their April 5, 1990, motion to vacate or stay the prejudgment possession order.

The judgment and final order of condemnation after trial was entered on July 9, 1991. Appellants' motion to vacate the judgment was denied on August 14, 1991. This appeal followed.

---

[1] In anticipation of the eminent domain action, appellants filed, but did not serve, an action in the East District of the Superior Court on March 31, 1989. After the filing of the Agency's eminent domain action in the Central District, appellants filed a first amended complaint in the East District. The Agency's motion to dismiss this action was granted, and the matter was dismissed pursuant to Code of Civil Procedure section 1245.255, subdivision (a)(1) on February 27, 1990. That order of dismissal was affirmed on appeal by this District.

In the eminent domain action, appellants also cross-complained for declaratory relief contending, inter alia, that their constitutional rights had been violated. The Agency's demurrers to the cross-complaint were sustained, appellants filed an amended cross-complaint, and the Agency's demurrers to the amended pleading were sustained without leave to amend. An appeal from the dismissal of the cross-complaint was dismissed by this district on the ground there was no final judgment.

## Discussion

### I. *Timeliness of Appeal**

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

### II. *Resolution of Necessity*

 In what appears to be a case of first impression, we must determine whether the Agency's board of commissioners or the City Council is the "governing body" of the Agency for purposes of Code of Civil Procedure sections 1245.210 and 1245.220, which require the governing body of a public entity to adopt a resolution of necessity prior to the commencement of an eminent domain proceeding. In order to make this determination, we must first set forth the applicable provisions of the Community Redevelopment Law and the Eminent Domain Law.

#### A. *Community Redevelopment Law*

California's Community Redevelopment Law is found at section 33000 et seq. of the Health and Safety Code. The legislative findings which underpin the state's Community Redevelopment Law are recited at section 33250 of the Health and Safety Code: "The Legislature hereby finds . . . that there exist in areas of this state residential, nonresidential, commercial, industrial or vacant areas, and combinations thereof, which are slum or blighted, . . . which hamper or impede proper economic development of such areas and which impair or arrest the sound growth of the area . . . ." The Legislature also found that there is a "serious need throughout the state for adequate educational, recreational, cultural and other community facilities . . . and . . . [¶] a seriously inadequate supply of safe and sanitary dwelling[s] . . . ." (Health & Saf. Code, § 33250; see also, *id.* at § 33030, "[T]here exist in many communities blighted areas which constitute either physical, social, or economic liabilities or both, requiring redevelopment in the interest of the health, safety, and general welfare of the people of such communities and of the state.")[2]

As a result of these findings, the Legislature declared that it is the policy of this state "to promote the sound growth and development of urban areas

---

*See footnote, *ante*, page 1047.

[2]Blighted areas are characterized by unsafe buildings (Health & Saf. Code, § 33031), faulty urban planning (*id.* at § 33032), depreciated values and inadequate tax receipts (*id.* at former § 33033), unproductive conditions of land and loss of population (*id.* at former § 33034), threats to the public health and safety of the residents (*id.* at § 33035), and injury to the private landowners (*id.* at § 33036).

and new communities through the correction of substandard, insanitary, blighted, deteriorating conditions, by the clearance, replanning, reconstruction, redevelopment, rehabilitation, restoration, conservation or proper planning of such areas . . . reasonably accessible thereto and by the undertaking of public and private improvement programs relating thereto." (Health & Saf. Code, § 33251.)

"There is in each community a public body, corporate and politic, known as the redevelopment agency." (Health & Saf. Code, § 33100.) The term "community" includes a city. (*Id.* at § 33002.) The need for a redevelopment agency in a city may be declared by the legislative body of the city. (*Id.* at § 33101.) The legislative body of a city is generally its city council. (*Id.* at § 33007.) When a city council adopts an ordinance declaring the need for a redevelopment agency in the city, the city council may establish itself as the redevelopment agency or it may establish a separate redevelopment agency. (*Id.* at §§ 33003, 33110, 33200.) If the city council declares itself to be the redevelopment agency, the city council is the governing board of the redevelopment agency. (*Id.* at § 33200.) If the city council establishes a separate redevelopment agency, it appoints five to seven members to act as the governing board of the redevelopment agency. (*Id.* at § 33110.)[3]

In order to engage in redevelopment activities, a city must comply with the requirements of the Community Redevelopment Law. The city council or the city planning commission adopts a general plan for the city. (Health & Saf. Code, § 33302.) The city council authorizes the designation of survey areas; this duty may be delegated to the planning commission or the redevelopment agency. (*Id.* at § 33310.) The planning commission, with the cooperation of the redevelopment agency, designates as project areas those survey areas which are blighted and whose redevelopment is necessary to eliminate that blight. (*Id.* at §§ 33320.1, 33322, 33323.) The planning commission, with the cooperation of the redevelopment agency, formulates a preliminary plan for the redevelopment of each project area. (*Ibid.*) The planning commission submits the preliminary plan to the redevelopment agency. (*Id.* at § 33325.)

The redevelopment agency prepares and approves, after public hearing, a redevelopment plan. (Health & Saf. Code, § 33330.) Redevelopment plans may provide for the redevelopment agency to acquire real property in the project area by condemnation. (*Id.* at § 33342.) Owners of property in the

---

[3]The establishment of a separate governing board is infrequent. In 1989, only 13 of 349 communities with redevelopment agencies had established separate governing boards. (David F. Beatty et al., Redevelopment in California (1991) p. 17.)

project area subject to condemnation under the redevelopment plan must be notified. (*Id.* at § 33350.) The redevelopment agency submits the redevelopment plan to the planning commission for its report and recommendation. (*Id.* at § 33346.) The redevelopment agency submits the redevelopment plan to the city council. (*Id.* at § 33351.) After a public hearing, the city council adopts the redevelopment plan. (*Id.* at § 33364.) The city council and the redevelopment agency may hold joint public hearings. (*Id.* at § 33355.) If the city council is the redevelopment agency, the city council may adopt the redevelopment plan without any further action by the redevelopment agency. (*Id.* at § 33359.)

After the redevelopment plan is adopted by the city council, the redevelopment agency is responsible for implementing the plan. (Health & Saf. Code, § 33372.) A redevelopment agency may sue and be sued, have a seal, make and execute contracts and other instruments necessary or convenient to the exercise of its powers, and make, amend and repeal bylaws and regulations not inconsistent with, and to carry into effect, the powers and purposes of the Community Redevelopment Law. (*Id.* at § 33125.) The redevelopment agency may acquire real property within the project area for purposes of redevelopment by eminent domain. (*Id.* at § 33391.) A redevelopment agency may adopt a resolution of necessity declaring the public necessity for the condemnation of a particular parcel of real property. (See *id.* at § 33398.) If the redevelopment agency acquires property from certain funds, the sale or lease of such property by the redevelopment agency must first be approved by the city council after public hearing. (*Id.* at § 33434; *Nolan* v. *Redevelopment Agency* (1981) 117 Cal.App.3d 494 [172 Cal.Rptr. 797].)

The redevelopment agency must comply with certain procedural requirements forth in the Code of Civil Procedure, before condemning real property. We next set forth those requirements.

B. *Eminent Domain Law*

California's Eminent Domain Law is found at section 1230.010 et seq. of the Code of Civil Procedure. ■ The power of eminent domain is inherent in sovereignty, and a state or subsidiary thereof may exercise that power pursuant to legislative authority. (*People* v. *Superior Court* (1937) 10 Cal.2d 288 [72 P.2d 1221].) The power of eminent domain may only be exercised for a public use. (Code Civ. Proc., § 1240.010.) However, where the Legislature provides by statute that a purpose is one for which eminent domain may be exercised, such action is deemed to constitute a declaration by the Legislature that such purpose is a public use. (*Ibid.*) " 'A legislatively authorized taking will be upheld if the taking is for a use which concerns the whole community or promotes the general interest in its relation to any

legitimate object of government.' " (Cal. Law Revision Com. com., 19 West's Ann. Code Civ. Proc. (1975 ed.) § 1240.010, p. 503, quoting *Bauer v. County of Ventura* (1955) 45 Cal.2d 276, 284 [289 P.2d 1].)

The power of eminent domain may be exercised to acquire property only by a person authorized by statute to exercise the power of eminent domain. (Code Civ. Proc., § 1240.020.) Such power may be exercised only if: (1) the public interest and necessity require the project; (2) the project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury; and (3) the property sought to be acquired is necessary for the project. (*Id.* at § 1240.030.) A "public entity" may exercise the power of eminent domain "only if it has adopted a resolution of necessity" which meets the requirements of section 1245.210 et seq. of the Code of Civil Procedure. (*Id.* at § 1240.040.) The resolution of necessity must be adopted by the "governing body" of the public entity attempting to exercise its eminent domain powers. (*Id.* at § 1245.220.) A resolution of necessity is "an administrative determination that the statutory prerequisites for taking particular property have been met." (Cal. Law Revision Com. com., 19 West's Ann. Code Civ. Proc. (1975 ed.) § 1245.230, p. 581.)

Section 1245.210 of the Code of Civil Procedure defines "governing body" as, "[i]n the case of a taking by a local public entity, the legislative body of the local public entity." A local public entity is any public entity other than the state. (Code Civ. Proc., § 1235.150.) A public entity includes "the state, a county, city, district, public authority, public agency, and any other political subdivision in the state." (*Id.* at § 1235.190.) "Legislative body" is not further defined in the Eminent Domain Law, but the legislative bodies of local public entities are specified in the statutes governing such entities. (Legis. committee com., 19 West's Ann. Code Civ. Proc. (1982 ed.) § 1245.210, p. 577.)

A resolution of necessity must be approved by a two-thirds vote of members of the governing body of the public entity (Code Civ. Proc., § 1245.240) and notice must be given of a public hearing on the resolution. (*Id.* at § 1245.235). A person having an interest in the property subject to a resolution of necessity may challenge that resolution by writ of mandate prior to commencement of an eminent domain proceeding or by objection to the right to take if the proceeding has been commenced. (*Id.* at § 1245.255.)

C. *Who Must Adopt the Resolution of Necessity of a Redevelopment Agency?*

Appellants contend the trial court erred in finding that the Agency could lawfully take the subject property by eminent domain, since no

resolution of necessity had been adopted by the City Council. Appellants concede that such a resolution was passed by the Agency's Board of Commissioners. Appellants contend, however, that, pursuant to sections 1245.210 and 1245.220 of the Code of Civil Procedure, such a resolution must be enacted by the "governing body" of the "public entity" attempting to exercise eminent domain powers and that the "governing body" of the Agency is its legislative body, the City Council.

Appellants reach this conclusion by grafting the definition of "legislative body" found in the Community Redevelopment Law onto the procedural requirements found in the Eminent Domain Law. It is clear that the "legislative body" of a California city is its city council, both for purposes of the Community Redevelopment Law contained in the Health and Safety Code and for purposes of the Eminent Domain Law contained in the Code of Civil Procedure. It is also self-evident that where a city council acts as a redevelopment agency, the city council is the legislative body of the redevelopment agency. We conclude, however, that where a separate redevelopment agency has been established, the members of the redevelopment agency constitute its governing board and legislative body.

The Legislature did not intend the definition of "legislative body," found in the Community Redevelopment Law, to be used to define the term "governing body," as used in the Eminent Domain Law. In fact, the Legislature chose expressly to define the term "governing body" in the Eminent Domain Law itself. (Code Civ. Proc., § 1245.210.) Code of Civil Procedure section 1245.210 defines "governing body" as the "legislative body" of the "local public entity." The local public entity which is acting in eminent domain in this matter is the Agency, not the City of Long Beach itself. (*Pacific States Enterprises, Inc.* v. *City of Coachella* (1993) 13 Cal.App.4th 1414, 1422-1425 [17 Cal.Rptr.2d 68] [even where city council acts as redevelopment agency, the two are separate and distinct legal entities].)[4] Further, the legislative body described in the Health and Safety Code is the legislative body of the "community" (in this case the city) not the "local public entity" (in this case the redevelopment agency). A local public entity may be a community, i.e., a political subdivision of the state such as a county, city, or town, or it may be a local agency, department or commission, or other "entity" entitled to proceed in eminent domain. Thus, the cited provisions of the Eminent Domain Law apply to a much broader class of

---

[4]"Well-established and well-recognized case law holds that the mere fact that the same body of officers acts as the legislative body of two different governmental entities does *not* mean that the two different governmental entities are, in actuality, one and the same." (*Pacific States Enterprises, Inc.* v. *City of Coachella, supra*, at p. 1424, italics in original.)

"entities" than the Community Redevelopment Law provisions, which apply only to "legislative bodies" or "agencies."

The Community Redevelopment Law envisions that redevelopment activities may be undertaken either by the "legislative body" of the community or by a separate "redevelopment agency" established by the legislative body. In the latter instance, the legislative body appoints members of the redevelopment agency and delegates to the redevelopment agency the eminent domain powers which have been delegated to the community by the Legislature. Other related powers are also delegated to the redevelopment agency. For example, the redevelopment agency may sue and be sued, make and execute contracts and "other instruments necessary or convenient to the exercise of its powers" and make, amend, or repeal bylaws and regulations. (Health & Saf. Code, § 33125.)

The Legislature, in using the terms "legislative body" and "agency," was distinguishing between the two broad species of redevelopment authorities. The Community Redevelopment Law is replete with distinctions between the two entities. For example, both the redevelopment agency and the legislative body must separately approve a redevelopment plan where a separate redevelopment agency has been established and the legislative body must approve certain sales or leases of property by the redevelopment agency. We therefore conclude that the definition of "legislative body" found in the Health and Safety Code was not intended to be used to define the term "governing body" used in the Code of Civil Procedure as applied to takings by a separate redevelopment agency. This conclusion is also compelled by the broad grant of redevelopment powers by a city council to its redevelopment agency, including the power of eminent domain, which has clearly been authorized by the Legislature. It would be incompatible with this broad scheme of delegated power to require that, at the time of exercise of eminent domain powers by a redevelopment agency, such agency must return to the city council to request that a resolution of necessity be enacted.[5]

Appellants' only authority is the case of Nolan v. Redevelopment Agency, supra, 117 Cal.App.3d 494, which involved the unauthorized sale of redevelopment agency-owned property and not the exercise of eminent domain powers. In Nolan, the city council was itself acting as the redevelopment agency. Despite the broad delegation of powers to a redevelopment agency authorized by the Community Redevelopment Law, the Legislature has

---

[5]This interpretation of the statutory scheme has been adopted by at least some commentators. See, e.g., David F. Beatty et al., Redevelopment in California, supra, at page 107 and Condemnation Practice in California (Cont.Ed.Bar 1992) page 127.

provided in Health and Safety Code section 33434 that in the case of sales of redevelopment agency property, purchased in whole or in part from the redevelopment agency's revolving fund, such sales must first be approved by the legislative body of the community after public hearing. The *Nolan* decision involves the sole issue whether the redevelopment agency in that case complied with section 33434 of the Health and Safety Code, and does not speak to the issue before this court. The *Nolan* court stated, in dictum, that in the case of such a sale of property owned by a separate redevelopment agency the city council must pre-approve the sale. Since this case does not involve the sale of redevelopment agency property, even *Nolan*'s dictum is inapplicable to the facts of this case. Furthermore, *Nolan*'s observation that "no such distinction exists" (117 Cal.App.3d at p. 501) between the city council and the city council *acting in the capacity* of the redevelopment agency has been roundly criticized in *Pacific States Enterprises, Inc. v. City of Coachella, supra,* 13 Cal.App.4th at pages 1422-1425. (Italics added.)

Inasmuch as appellants concede that a resolution of necessity was enacted by the Agency, we conclude that the trial court did not err in finding that the Agency was lawfully empowered to take the subject property by eminent domain.

III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

### DISPOSITION

The judgment is affirmed. Appellants shall bear respondent's costs on appeal.

Turner, P. J., and Armstrong, J., concurred.

A petition for a rehearing was denied April 27, 1993.

---

*See footnote, *ante,* page 1047.