[No. H012101. Sixth Dist. July 27, 1995.]

SANTA CRUZ COUNTY REDEVELOPMENT AGENCY, Plaintiff and Respondent, v.
KENNETH F. IZANT et al., Defendants and Appellants.

**COUNSEL**

Bertram C. Izant, in pro. per. and for Defendants and Appellants.

Dwight L. Herr, County Counsel, Samuel Torres, Jr., Assistant County Counsel, Wylie, McBride, Jesinger, Sure & Patten and Richard J. Wylie for Plaintiff and Respondent.

## Opinion

ELIA, J.—The Santa Cruz Redevelopment Agency (Agency) sought an easement over a private parking area owned by appellants.[1] Agency adopted a resolution of necessity and then filed a complaint in eminent domain. After prohibiting appellants from introducing any evidence except for a four-page document, the trial court ruled that Agency possessed the right to take. Compensation was set at $125,000 and a judgment in condemnation was entered. For reasons we shall explain, we reverse.

### Facts and Procedural Background

This case concerns an easement over appellants' property. The easement is to be used by the public and Pacific Western Bank patrons. The area in dispute is located in Soquel Village. It consists of four parcels. One parcel is owned by Pacific Western Bank. It is the site of the bank building, four drive-through windows, an automatic teller machine, and parking lot. The property has frontage on Porter Street and Soquel Drive. However, the only access is by a one-way entrance on Porter Street and a one-way exit via a ramp and easement to Soquel Drive. The easement is shared by all businesses on Soquel Drive between Porter Street and Soquel Creek, as well as being the only access to the Hearts of Soquel Mobile Home Park.

Two other parcels are also owned by the bank. They are a parking lot and easement to the southeast of the bank. The last parcel is owned by appellants. It consists of a small retail/office complex containing a laundromat, two offices, and a parking lot. The site fronts on Porter Street and is accessed by a two-way driveway at the southwestern corner of the property.

In 1977, Pacific Western Bank's predecessor sought to amend existing bank use to build additional parking, drive-through depository teller bays, and a retaining wall. The application was approved so long as there was a "shared circulation easement" to the property to the southeast (appellants' parcel). Shortly after construction was complete, traffic problems occurred. The bank filed for an amendment to the 1977 approval. It sought to revise parking circulation for the bank and appellants' property. Appellants were listed as co-applicants. The amendment proposed a joint circulation pattern between the two properties with two-way access through appellants' property to Porter Street. In 1979, this request was approved.

The 1979 permit amendment resulted in a traffic circulation plan providing for a one-way entrance to the bank property from Porter Street, and

---

[1]Appellants are Kenneth F. Izant, Gladys E. Izant, Bertram C. Izant, David W. Izant, Norman Bei, T. J. Scott, and Does 1 through 10, inclusive.

entrance and exit for both properties on Porter Street through appellants' property, and an exit via a ramp and right-of-way to the east which eventually connects to Soquel Drive.

In order to comply with the permit amendment, the bank entered into a 10-year lease agreement with appellants to use their entire property, including the buildings, parking, and access. When the 10 years expired, the bank decided not to renew the lease. In 1989, appellants leased the property to Norman Bei et al.

In March 1989, the traffic circulation plan was blocked when the new lessee placed wooden sawhorse barriers across the connection between appellants' property and the bank property. Because the access was closed, the exit for bank patrons was via the ramp and easement to Soquel Drive. Parking spaces previously used were also unavailable.

In 1989, the planning commission determined that the bank was not complying with its use permits. The planning commission concluded that the changed traffic pattern had created hazardous traffic conditions. On August 9, 1990, a resolution amending the bank's use permit was passed. It required the bank to enter into an agreement with the county/Agency to bear the expense of acquiring an access easement to reinstate the shared access between the bank property and appellants' property.

The amendment included the following language: "Within 5 days of the date of the amendment approval, the permit holder shall either record a perpetual reciprocal circulation and maintenance agreement in a form approved by the Planning Director with the adjacent landowner to provide through traffic circulation between [the properties] or the permit holder shall enter into an agreement with the County to pay for the County's costs, including personnel salaries and benefits, legal fees and costs, and compensation to the landowner and/or lessee for acquiring an interest in the adjacent land which will permit through circulation . . . . In the event the County fails to commence condemnation proceedings to acquire the off-site property interest within 120 days of the execution of the agreement, then this condition which is dependent upon the property interest acquisition shall be deemed to be waived."

Shortly after the permit was amended, the county filed a lawsuit against appellants, the tenant, and the bank in which the county claimed, among other things, that the barricades erected constituted a public nuisance. Appellants' demurrer to county's first amended complaint was sustained without leave to amend. Subsequent litigation between appellants and the bank resulted in bank dismissing its complaint.

Bank and Agency made a joint offer to appellants to acquire the property. Those negotiations were unsuccessful. Accordingly, the plans for an eminent domain action began.

On June 26, 1990, the bank, Agency, and county entered into an agreement regarding the proposed eminent domain action. Under the agreement, the Agency would commence and prosecute an eminent domain action to acquire (1) an easement for parking spaces on appellants' property for public parking purposes; (2) a nonexclusive easement to reestablish the shared access between the bank property and appellants' property; and (3) a nonexclusive easement to obtain access from Porter Street across appellants' property to provide access to the public parking spaces and to the shared access easement. Among other things, Agency and the bank agreed to share litigation expenses, agreed to share equally the amount of any judgment in condemnation, and agreed to share the expense of maintaining the easements. Agency also agreed to dismiss its action against bank, and bank would dismiss its cross-complaint in that action.

On September 11, 1990, Agency held a public hearing on the issue of condemnation. The hearing resulted in Agency's unanimous adoption of a resolution of necessity.

On October 22, 1990, Agency filed a complaint in eminent domain. Appellants objected to Agency's right to take. After various pretrial proceedings, a court trial on Agency's right to take was held. On the first day of trial, Agency moved to prohibit appellants from introducing any evidence not included in the record from the Agency hearing. The trial court ultimately granted Agency's motion and excluded all evidence offered by appellants, except for the June 26, 1990, agreement.

On October 27, 1992, the trial court ruled that Agency possessed the right to take. A trial on compensation resulted in appellants being awarded $125,000. After appellants appealed, they filed a motion with our court to vacate the judgment and remand for a new trial. The motion was based upon the fact that the reporter inadvertently lost or destroyed the reporter's transcript for the first day of trial. Agency opposed the motion, arguing that the transcript was not necessary to determine the merits of the appeal. We deferred deciding the motion, preferring to consider it with the merits of this appeal.

*Discussion*

I. *Missing Portion of Reporter's Transcript*

Appellants claim the judgment should be vacated and a new trial ordered because the court reporter lost or inadvertently destroyed a portion of the

reporter's transcript. Agency opposed the motion, claiming the appeal could be decided despite the missing portion of the transcript.

Code of Civil Procedure section 914[2] provides, in pertinent part, "When the right to a phonographic report has not been waived and when it shall be impossible to have a phonographic report of the trial transcribed by a stenographic reporter as provided by law or by rule, because of the death or disability of a reporter who participated as a stenographic reporter at the trial or *because of the loss or destruction, in whole or in substantial part, of the notes of such reporter, the trial court or a judge thereof, or the reviewing court shall have power to set aside and vacate the judgment, order or decree from which an appeal has been taken or is to be taken and to order a new trial of the action or proceeding.*" (Italics added.)

For a new trial to be granted because of destruction of the reporter's transcript, the moving party must show the impossibility of securing the transcript, the presence of substantial issues establishing the necessity of a transcript, and also demonstrate reasonable diligence. (*Duarte* v. *Rivers* (1949) 90 Cal.App.2d 152, 155 [202 P.2d 612].) A new trial motion on the ground that the reporter's transcript has become unavailable should ordinarily be granted where a reasonable showing is made that the transcript is necessary to present substantial issues. (*Rambo* v. *Rambo* (1948) 84 Cal.App.2d 632, 634 [191 P.2d 480].)

To determine if the reporter's transcript is necessary to present substantial issues, a reasonable test of substantiality is whether questions appellant desired to raise on appeal could be properly considered without the lost portion of the transcript. If they could, then the loss would not be considered substantial. (*Lilienthal* v. *Hastings Clothing Co.* (1954) 123 Cal.App.2d 91, 93 [266 P.2d 56].) In *Aylmer* v. *Aylmer* (1956) 139 Cal.App.2d 696 [294 P.2d 98], it appeared that evidence taken at the first hearing was necessary to a proper determination of the plaintiffs' claims. Thus, the court held it was an abuse of discretion not to grant the new trial motion.

In this case, there was a two-day trial on the right to take. The notes from the first day, October 26, 1992, are missing. It appears that a settled statement is not possible. However, one of appellants' issues on appeal can be decided without the missing portion of the transcript, and since it requires reversal, we will now proceed to consider the merits of that issue.

## II. *Exclusion of Evidence*

At trial, appellants were prohibited from introducing any evidence except for the June 26, 1990, agreement. Agency argued that the scope of the

---

[2]All further unspecified statutory references are to the Code of Civil Procedure.

trial court's review was limited to examining the record of Agency's proceedings, including evidence received by Agency prior to its decision. Although the trial court asked appellants for an offer of proof, it ultimately agreed with Agency. The trial court stated, "Counsel, I asked you repeatedly for an offer of proof by specific witnesses.[3] I never did get it, but let's assume everything possible in your favor as far as your, what I consider, an opening statement. Really, I don't think there's anything here that it takes it out of the authority that has been cited and the motion in limine will be granted, and we'll limit ourselves to the record of the proceedings."

The trial court's decision to exclude appellants' evidence stemmed from its confusion about the standard of review. It applied the standard of review for an attack on the resolution of necessity to *all of the trial proceedings* on the right to take. Although no new evidence may be admitted in considering whether Agency committed a gross abuse of discretion in adopting the resolution of necessity, evidence is plainly admissible on a defendant's other objections to the condemning authority's right to take. Because of the dearth of authority on this issue, we will first review the statutory condemnation scheme before explaining our conclusion.

■ " 'The power of eminent domain is an inherent attribute of sovereignty.' " (*City of Oakland* v. *Oakland Raiders* (1982) 32 Cal.3d 60, 64 [183 Cal.Rptr. 673, 646 P.2d 835, 30 A.L.R.4th 1208], citing *County of San Mateo* v. *Coburn* (1900) 130 Cal. 631, 634 [63 P. 78].) The government's eminent domain power has two important constitutional limitations. (*City of Oakland* v. *Oakland Raiders*, *supra*, 32 Cal.3d at p. 64.) First, property may only be taken or damaged for a public use. (U.S. Const., Amends. V, XIV; Cal. Const., art. I, § 14; *City of Oakland* v. *Oakland Raiders*, *supra*, 32 Cal.3d at p. 64.) Second, just compensation must be awarded for properties taken. (Cal. Const., art. I, § 14.)

■ The exercise of the eminent domain power requires a finding of public necessity. (§ 1240.030.) There are three elements to such a finding. First, public interest and necessity must require the project. Second, the project must be planned or located in the manner that will be most compatible with the greatest public good and the least private injury. Third, the property sought to be acquired must be necessary for the project. (§ 1240.030; see also *Redevelopment Agency* v. *Norm's Slauson* (1985) 173 Cal.App.3d 1121, 1125 [219 Cal.Rptr. 365].)

A public agency must hold a hearing to consider whether the taking meets these three criteria. (§ 1245.235; *Redevelopment Agency* v. *Norm's Slauson*,

---

[3]Because of the missing transcript, we cannot determine whether appellant provided an adequate offer of proof. Thus, we cannot affirm based upon an inadequate offer of proof.

*supra*, 173 Cal.App.3d at p. 1125.) The person whose property is to be acquired must be given notice and an opportunity to be heard. (§ 1245.235; *Conejo Recreation & Park Dist.* v. *Armstrong* (1981) 114 Cal.App.3d 1016 [170 Cal.Rptr. 891].) After the hearing, if the agency decides the taking meets the criteria, then it must adopt a resolution of necessity. (§§ 1240.040; 1245.220.) A resolution of necessity is a prerequisite to beginning a condemnation action. (§§ 1240.040, 1245.220.)

Once a resolution of necessity is adopted, the resolution conclusively establishes the three criteria set forth under section 1240.030. (§ 1245.250.)[4] However, a person having an interest in property described in a resolution of necessity may still obtain judicial review of the validity of the resolution. (§ 1245.255.) Review is available *before* the eminent domain action via a writ of mandate pursuant to section 1085. (§ 1245.255.) Review is also available *after* the commencement of the eminent domain proceeding by objection to the right to take. (§ 1245.255; *Anaheim Redevelopment Agency* v. *Dusek* (1987) 193 Cal.App.3d 249, 255 [239 Cal.Rptr. 319]; *City of Morgan Hill* v. *Alberti* (1989) 211 Cal.App.3d 1435, 1438 [260 Cal.Rptr. 42].)

A resolution of necessity will not have a conclusive effect as to the three criteria set forth under section 1240.030 "to the extent that its adoption or contents were influenced or affected by gross abuse of discretion by the governing body." (§ 1245.255, subd. (b); *Anaheim Redevelopment Agency* v. *Dusek, supra*, 193 Cal.App.3d at p. 255.)[5] A gross abuse of discretion may be shown by a lack of substantial evidence supporting the resolution of necessity. (*Huntington Park Redevelopment Agency* v. *Duncan* (1983) 142 Cal.App.3d 17, 24 [190 Cal.Rptr. 744].) It may also be shown where at the time of the agency hearing, the condemnor had irrevocably committed itself to the taking of the property regardless of the evidence presented. (*Redevelopment Agency* v. *Norm's Slauson, supra*, 173 Cal.App.3d 1121.)

In *Anaheim Redevelopment Agency* v. *Dusek, supra*, 193 Cal.App.3d at page 255, the court examined section 1245.255's legislative history to clarify

[4]Section 1245.250 provides, in pertinent part, "(a) Except as otherwise provided by statute, a resolution of necessity adopted by the governing body of the public entity pursuant to this article conclusively establishes the matters referred to in Section 1240.030."

[5]Section 1245.255 provides in pertinent part, "(a) A person having an interest in the property described in a resolution of necessity adopted by the governing body of the public entity pursuant to this article may obtain judicial review of the validity of the resolution: [¶] . . . [¶] (2) After the commencement of the eminent domain proceeding, by objection to the right to take pursuant to this title. [¶] (b) A resolution of necessity does not have the effect prescribed in Section 1245.250 to the extent that its adoption or contents were influenced or affected by gross abuse of discretion by the governing body."

the trial court's scope of review of the resolution of necessity. Although the 1975 legislative committee comments to section 1245.255 suggested that the abuse of discretion standard under section 1094.5 applied, the 1978 legislative committee comments indicated that gross abuse of discretion was the appropriate standard. (*Anaheim Redevelopment Agency* v. *Dusek, supra,* 193 Cal.App.3d at pp. 255-257.) According to the 1978 legislative committee comments, "Subdivision (a)(1) is added to Section 1245.255 to make clear that ordinary mandamus (Section 1085) is an appropriate remedy for the owner of property described in a resolution of necessity to challenge the validity of the resolution of necessity. . . . [¶] *Judicial review of the resolution of necessity by ordinary mandamus on the ground of abuse of discretion is limited to an examination of the proceedings to determine whether adoption of the resolution by the governing body of the public entity has been arbitrary, capricious, or entirely lacking in evidentiary support . . . .*" (Legis. committee com.) Deering's Ann. Code Civ. Proc. (1981 ed.) § 1245.255, pp. 101-102, italics added.) Accordingly, the court reviews the agency's decision for a gross abuse of discretion to determine whether adoption of the resolution of necessity was arbitrary, capricious, or entirely lacking in evidentiary support. The court must not "retrace the legislative body's analytic route when the statutory scheme requires much greater deference to the a condemning body's determination of necessity." (*Anaheim Redevelopment Agency* v. *Dusek, supra,* 193 Cal.App.3d at p. 261.)

From the comments, cases, and statutory language, it is clear that the trial court's *review of the validity of the resolution of necessity* under section 1245.255 is limited to a review of the agency's proceedings. No additional evidence may be admitted. Our reasons are as follows. First, the legislative committee comments support this interpretation. The comments state that review "is limited to an examination of the proceedings." This wording indicates that no new evidence may be admitted. Second, the resolution of necessity is a legislative act (*Anaheim Redevelopment Agency* v. *Dusek, supra,* 193 Cal.App.3d at p. 261) and thus great deference must be given to the legislative determination. (*Ibid.*) Finally, the property owner has an opportunity to introduce evidence during the agency proceedings and thus can attack the showing of public necessity during that hearing. (§ 1245.235.)

In sum, we conclude the trial court's review of the validity of the resolution of necessity under section 1245.255 is limited to a review of the agency's proceedings and therefore no new evidence may be admitted. Thus, in this case, the trial court's decision to exclude evidence was correct with respect to the *resolution of necessity.* However, the trial on Agency's right to take was not limited to deciding the validity of the resolution of

necessity. Other issues were presented. As we explain below, appellants *were* entitled to introduce evidence on these other issues.

Once an agency adopts a resolution of necessity, it may then file a complaint in eminent domain. The property owner may object to the agency's right to take. The objections may be raised by demurrer or answer, and they must be specifically pleaded. (§ 1250.350.)

Section 1250.360 sets forth grounds for objecting to the right to take. These grounds apply regardless of whether the agency has adopted a resolution of necessity. (§ 1250.360.) The grounds for objection are "(a) The plaintiff is not authorized by statute to exercise the power of eminent domain for the purpose stated in the complaint. [¶] (b) The stated purpose is not a public use. [¶] (c) The plaintiff does not intend to devote the property described in the complaint to the stated purpose. [¶] (d) There is no reasonable probability that the plaintiff will devote the described property to the stated purpose within (1) seven years, or (2) 10 years where the property is taken pursuant to the Federal Aid Highway Act of 1973, or (3) such longer period as is reasonable. [¶] (e) The described property is not subject to acquisition by the power of eminent domain for the stated purpose. [¶] (f) The described property is sought to be acquired pursuant to Section 1240.410 (excess condemnation), 1240.510 (condemnation for compatible use), or 1240.610 (condemnation for more necessary public use), but the acquisition does not satisfy the requirements of those provisions. [¶] (g) The described property is sought to be acquired pursuant to Section 1240.610 (condemnation for more necessary public use), but the defendant has the right under Section 1240.630 to continue the public use to which the property is appropriated as a joint use. [¶] (h) Any other ground provided by law." (*Ibid.*)

The 1975 legislative committee comments state that "Section 1250.360 prescribes the grounds for objection to the right to take *that may be raised in any eminent domain proceeding regardless of whether the plaintiff has adopted a resolution of necessity that is given conclusive effect on other issues.*" (Legis. committee com., Deering's Ann. Code Civ. Proc., *supra*, § 1250.360, p. 149, italics added.) With reference to subdivision (h), the comments note: "While the provisions of Section 1250.360 catalog the objections to the right to take available under the Eminent Domain Law where the resolution is conclusive, there may be other grounds for objection not included in the Eminent Domain Law, e.g., where there exist federal or constitutional grounds for objection or where prerequisites to condemnation are located in other codes." (*Id.* at p. 150.)

Objections to the right to take are heard before determining the issue of compensation. (§ 1260.110.) Section 1260.110 provides, "(a) Where objections to the right to take are raised, unless the court orders otherwise, they shall be heard and determined prior to the determination of the issue of compensation. [¶] (b) The court may, on motion of any party, after notice and hearing, *specially set such objections for trial.*" (§ 1260.110, italics added.)

In *City of Los Angeles* v. *Keck* (1971) 14 Cal.App.3d 920 [92 Cal.Rptr. 599], there was a trial on plaintiff's right to take, with evidence and testimony admitted. In *San Bernandino County Flood Control Dist.* v. *Grabowski* (1988) 205 Cal.App.3d 885, 892 [252 Cal.Rptr. 676], "trial was commenced in the action [and the] trial court first heard evidence on [defendant's] objections to the [condemning agency's] 'right to take' the property . . . ." In *Long Beach Community Redevelopment Agency* v. *Morgan* (1993) 14 Cal.App.4th 1047 [18 Cal.Rptr.2d 100], "the first phase of trial on the 'right to take' issue was conducted over three days . . . ." (*Id.* at p. 1050.)

In *City of Oakland* v. *Oakland Raiders, supra,* 32 Cal.3d 60, the California Supreme Court reversed a summary judgment in favor of the property owner, and remanded the case for a "full evidentiary trial of the issues" on the government's right to take. (*Id.* at p. 63.) In so doing, the court recognized that there were triable issues regarding whether the proposed use of the property was a public use: "Our conclusion requiring a trial on the merits is reinforced by the long recognized and fundamental importance of the 'facts and circumstances' of each case in determining whether a proposed use is a proper public use. [Citations.] City and the Raiders should be afforded a full opportunity before a trial court to present the 'facts and circumstances' of their respective sides during a trial on the merits." (*City of Oakland* v. *Oakland Raiders, supra,* 32 Cal.3d at pp. 75-76.)

In this case, appellants objected to Agency's right to take. In their answer to the complaint, they raised many of the statutory objections listed in section 1250.360, along with other affirmative defenses. For example, appellants alleged that the stated purpose was not a public use, that the primary purpose of the taking was for the private benefit of the bank, and that Agency did not intend to devote the property to the stated purpose. Appellants are plainly entitled to a trial on their objections to the right to take, and are entitled to introduce evidence in support of those claims. As the comments to section 1250.360 note, these objections *"may be raised in any eminent domain proceeding regardless of whether the plaintiff has adopted a*

*resolution of necessity that is given conclusive effect on other issues.*" (Deering's Ann. Code Civ. Proc., *supra*, § 1250.360, p. 149, italics added.) Accordingly, the trial court erred in prohibiting appellants from introducing evidence and therefore the judgment must be reversed.

### Disposition

The judgment of condemnation is reversed. Costs on appeal to appellants.

Cottle, P. J., and Premo, J., concurred.

A petition for a rehearing was denied August 17, 1995.