Filed 8/14/14

# CERTIFIED FOR PARTIAL PUBLICATION[*]


## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO


SCOTT CARLTON,

     Plaintiff and Appellant,

v.

DR. PEPPER SNAPPLE GROUP, INC. et al.,

     Defendants and Respondents.

E056566

(Super.Ct.No. CIVVS1103729)

OPINION


APPEAL from the Superior Court of San Bernardino County.  Marsha Slough, Judge.  Affirmed in part; reversed in part.

Law Offices of Foroozandeh and Majid Foroozandeh for Plaintiff and Appellant.

Crone Hawxhurst, Gerald E. Hawxhurst and Daryl M. Crone for Defendants and Respondents.

---

[*]  Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of Discussion, parts C and D.

1

In a second amended complaint (SAC), plaintiff and appellant Scott Carlton (Carlton) sued defendants and respondents (1) Dr. Pepper Snapple Group, Inc. (Dr. Pepper); (2) Mott's LP (Mott's); (3) Larry D. Young (Young); (4) Caesar Vargas (Vargas); and (5) Graham Bailey (Bailey). The causes of action included (a) wrongful termination against Dr. Pepper and Mott's; (b) sex discrimination against all defendants; and (c) breach of contract against Dr. Pepper and Mott's. The trial court sustained, without leave to amend, the demurrer of Dr. Pepper, Vargas, Bailey, and Mott's. The trial court also sanctioned Carlton and his trial counsel jointly and severally in the amount of $1,360 due to Carlton's "wholly unjustified" interrogatory responses.

The only respondent on appeal is Dr. Pepper; the other defendants are not respondents in this appeal. Carlton contends the trial court erred by granting the demurrer because the demurrer was untimely. Next, Carlton asserts the demurrer improperly included the breach of contract cause of action, and therefore the trial court erred by sustaining the demurrer on that cause of action. Lastly, Carlton contends the trial court erred by imposing sanctions. We reverse in part, and affirm in part.

## FACTUAL AND PROCEDURAL HISTORY

A. <u>INCIDENT</u>

The facts in this subsection are taken from the SAC. In the SAC, Carlton asserts he was "employed with the company." It is unclear if Carlton's employer was Dr. Pepper or Mott's. Carlton contends he worked as a production manager for the company beginning in April 2009 and had an unblemished performance record. On December 16, 2010, Carlton was at a bi-weekly management meeting with Terry Gordon, Blaise

2

Batush, Tammy Sloan (Sloan), and Steve Summey. While waiting for the meeting to begin, Carlton received a text message on his personal cell phone.

Carlton looked at the message in plain view of Sloan, who was seated to Carlton's immediate right. The textual portion of the message read, "'Hope your day is going better th[a]n this guy.'" A picture included with the message reflected "a man sitting on a toilet with his penis appearing to be caught between the base of the toilet and the seat." Carlton handed the telephone to Sloan, who laughed and said, "'I'd like to meet this man.'" Sloan showed the text message to Steve Summey who also found the message humorous, and the telephone was returned to Carlton. Terry Gordon asked "what is so funny," so Carlton gave the telephone to him, and he also found the message humorous. Passing around the telephone lasted approximately 30 seconds, then the meeting began, and the meeting lasted approximately 45 minutes.

Later that same day, Sloan was in Carlton's office when Bailey entered. Bailey is a manager. Sloan told Bailey, "'[Y]ou've got to see this picture.'" Carlton said, "'This is [Sloan's] new boyfriend.'" Bailey responded, "'Oh my God . . . poor guy!'" Sloan and Bailey then left Carlton's office.

Vargas works in human resources. On December 16, 2010, Vargas instructed Carlton to accompany Vargas to the human resources office. Vargas informed Carlton that Vargas had received several complaints about the picture; however, Carlton alleges only one complaint was made and it came from Steve Summey. Bailey joined the meeting and told Carlton he "'take[s] this stuff very seriously.'" Bailey suspended Carlton pending an investigation. Carlton was ordered to return his badge, company cell

phone, and keys. Due to the suspension, Carlton sought medical treatment for anxiety and suicidal ideations. Carlton was terminated effective December 21, 2010, "for 'inappropriate behavior and failure to follow [the] Anti-Harassment Policy.'" Bailey signed Carlton's termination letter. No one else was suspended or terminated in connection with sharing the picture.

B. ORIGINAL AND FIRST AMENDED COMPLAINTS

On July 15, 2011, Carlton filed his original complaint against Dr. Pepper, Young, Vargas, and Bailey. The complaint included causes of action for wrongful termination, sexual discrimination, and breach of contract. On October 24, 2011, Carlton filed his first amended complaint (FAC), which added Mott's as a defendant and omitted the sexual discrimination cause of action. In the FAC, the wrongful termination cause of action was brought against all defendants, and the breach of contract action was against Dr. Pepper and Mott's.

The wrongful termination cause of action set forth the facts of the text message/picture sharing incident and subsequent termination, described *ante*. The breach of contract cause of action included allegations that Carlton could not be fired without cause and that Carlton had an unblemished performance record. Carlton asserted he had an employment contract guaranteeing a safe and friendly environment free of verbal harassment. In the breach of contract claim, Carlton asserted he was falsely accused of sexual harassment and therefore "wrongfully terminated."

4

Dr. Pepper, Mott's,[1] Vargas, and Bailey (collectively "defendants") demurred to the FAC.[2] Defendants asserted the wrongful termination cause of action could only be brought against an employer, thus the individual defendants could not be sued for wrongful termination. In regard to Mott's and Dr. Pepper, defendants argued the wrongful termination cause of action failed because Carlton did not allege the companies violated public policy. In regard to Carlton being the only employee who was fired, defendants asserted Carlton was the only employee who showed the picture to a female employee (Sloan).

As to the breach of contract cause of action, defendants asserted the action failed due to uncertainty. Defendants argued Carlton did not allege (1) whether the contract was written, oral, or implied; (2) the essential terms of the contract; (3) his performance of the contract; (4) how all defendants breached the contract; and (5) how Carlton was damaged by the breach.

On January 5, 2012, the trial court held a hearing on the demurrer to the FAC. At the beginning of the hearing, the trial court explained that the wrongful termination cause of action "needs to be amended to clearly layout the rationale, or reasons for—purported reasons for the termination." The court also noted that wrongful termination could not be brought against individual, non-employer, defendants. The court concluded Carlton "laid

---

[1] Motts made a special appearance.

[2] On October 25, 2011, the trial court dismissed the case with prejudice as to Young. Young was the President and CEO of Dr. Pepper, who had never met Carlton and was not involved in the decision to terminate Carlton's employment.

5

out the requisite elements for breach of contract." Therefore, the court said its tentative opinion was to sustain the demurrer for the wrongful termination action, but overrule the demurrer for the breach of contract action. The court adopted its tentative opinion as its ruling. In regard to amending, the court gave Carlton 30 days to amend as to the company, but denied leave to amend the wrongful termination action as to the individual defendants.

C.     SECOND AMENDED COMPLAINT

On February 3, 2012, Carlton filed his SAC, listing Dr. Pepper, Mott's, Vargas, Bailey, and Young as defendants. The SAC included three causes of action: (1) wrongful termination against Dr. Pepper and Mott's; (2) breach of contract against Dr. Pepper and Mott's; and (3) sex discrimination against all defendants. The wrongful termination action again set forth the factual allegations of Carlton sharing the text message/picture and being terminated.

The breach of contract cause of action again included allegations that Carlton could not be fired without cause and that Carlton had an unblemished performance record. Carlton again asserted he had an employment contract guaranteeing a safe and friendly environment free of verbal harassment. The breach of contract claim again reflected Carlton was falsely accused of sexual harassment and therefore "wrongfully terminated."

In the sexual discrimination cause of action, Carlton alleged that by terminating Carlton, but not Sloan, for sharing the picture, Carlton was singled out due to his gender. Carlton further alleged that Bailey created a hostile work environment for Carlton by

6

harassing him "with name calling like, 'Gay guy,' suggesting that he works out at 'Curves' a female gym and further suggesting that [Carlton] sleeps with other men."

An exhibit was included with the SAC. The exhibit was a right to sue letter from the California Department of Fair Employment and Housing. The letter reflected Carlton could sue Mott's due to being terminated based upon sex discrimination.

D.    DEMURRER

On March 9, 2012, defendants filed a demurrer to the SAC. As to the wrongful termination cause of action, defendants argued Carlton failed to allege Mott's and Dr. Pepper violated a public policy. In regard to the breach of contract cause of action, defendant asserted the allegations were uncertain because Carlton failed to allege (1) whether the contract was oral or written, (2) the essential terms of the contract, (3) Carlton's performance of the contract, (4) a breach by Dr. Pepper and Mott's, and (5) how Carlton was damaged.

As to the sex discrimination cause of action, defendant asserted individual defendants could not be liable for a management decision later found to be discriminatory. Vargas was the human resources official who suspended Carlton, and Bailey was the manager who signed Carlton's termination letter. Therefore, defendants argued the individual defendants could not be liable. Further, defendants asserted Carlton failed to exhaust his administrative remedies because he filed his original complaint, which included the discrimination claim, approximately five months before receiving his right to sue letter.

Additionally, defendants asserted the discrimination cause of action failed because the administrative complaint did not set forth the details of the alleged discrimination, it only reflected Carlton was terminated as a result of sex discrimination and so that the employer could "replace [Carlton] with a more favorable employee." Further, defendants asserted the discrimination claim could not be maintained against Dr. Pepper or the individual defendants because only Mott's was named in the administrative complaint. Lastly, defendants argued Carlton's sex discrimination claim failed as to all defendants because Carlton failed to allege he was a member of a protected class, in that he alleged he is male and the employee who replaced him is also male.

On April 2, 2012, Carlton filed an objection to the demurrer. Carlton asserted defendant's demurrer was untimely because "[a]ccording to Rule [3.]1320(j) a party has 10 days to answer or otherwise plead to the complaint or the remaining causes of action" (1) when a demurrer is overruled, (2) following the expiration of the time to amend, if the demurrer was sustained with leave to amend, or (3) following "[t]he sustaining of the demurrer if the demurrer was sustained without leave to amend." Carlton asserted he was given until February 20, 2012, to amend the FAC, so defendants exceed their time to demurrer to the SAC.

E.     HEARING

On April 11, 2012, the trial court held a hearing on defendants' demurrer to Carlton's SAC. The trial court asked Carlton's attorney (Foroozandeh) to explain his objection to the demurrer. Foroozandeh explained, "On January 5, 2012, you granted leave to amend the first amended complaint. So they have 30 days to answer. That

8

would put it on February 5, 2012.  Now, ten days to demurrer, plus five days for mailing, your Honor, that would put it around February 20th.  So, the demurrer is untimely."

Defendants argued that the Rule of Court cited by Carlton conflicted with Code of Civil Procedure section 471.5,[3] which grants 30 days (not 10 days) to respond to an amended complaint.  Additionally, defendants asserted Carlton's objection to the demurrer was "an invented reason" because Carlton defaulted on opposing the demurrer—the objection was filed two days after the deadline passed to oppose the demurrer.

The trial court overruled Carlton's objection.  The trial court explained, "I do not think it is the appropriate legal response to object to it as being untimely . . . ." Foroozandeh requested two weeks to respond to the demurrer.  The court denied the request and explained the argument about the untimely demurrer should have been presented in a "proper opposition to the demurrer," which would have also set forth reasons why the demurrer was not well founded.

The trial court asked Foroozandeh how the wrongful termination cause of action in the SAC was different from the FAC.  Foroozandeh explained that the individual defendants had been removed but he believed no additional facts needed to be alleged after the FAC; he believed the problem with the wrongful termination claim in the FAC only concerned needing to remove the individual defendants.  Defendants asserted the

_____

[3]  All subsequent statutory references will be to the Code of Civil Procedure unless otherwise indicated.

court sustained the demurrer to the FAC with leave to amend on the wrongful termination claim, as to the company, so that Carlton could allege sufficient facts.

Defendants asserted the wrongful termination and discrimination claims were intertwined. Defendants argued both claims failed against Dr. Pepper because only Mott's was named in the administrative complaint. Defendants also asserted the discrimination claim failed because the fact that Sloan was not fired did not create a cause of action—Carlton could properly be fired for his admitted act of sharing the picture.

As to the breach of contract cause of action, defendants asserted Carlton admitted not having a written contract, but failed to plead the specifics of an oral or implied contract. Defendants argued that Carlton only alleged he had to be fired for cause, and the complaint reflected Carlton was fired for cause; therefore, Carlton had "pled himself out of the court," and also failed to plead the required specifics of the contract.

Carlton's attorney (Foroozandeh) argued that everyone in the workplace should be treated equally, so the other people that shared the picture should have been admonished in the same way. Foroozandeh further argued that it was inappropriate for a manager to insinuate a person is homosexual regardless of whether the person is heterosexual or homosexual. In regard to the breach of contract claim, Foroozandeh argued the specifics of the oral contract "need[] to come out during the trial, it needs to come out during discovery."

Defendants asserted Foroozandeh was not arguing that Carlton was wrongfully terminated; rather, he was arguing that other people should have been fired as well.

10

Defendants argued that whether Sloan was fired is irrelevant. Foroozandeh again argued it was wrong to single out one person for punishment when multiple people were involved. Foroozandeh also argued the court had already overruled the demurrer to the FAC for the breach of contract action, so the demurrer should not be sustained for that claim since "[n]othing has changed."

Foroozandeh concluded, "The facts are exactly what they are, and we intend to go to trial and prove it." The court asked, "Are you telling me you have no additional facts to plead?" Foroozandeh responded, "Not at this time, your Honor." The trial court sustained the demurrer as to all three causes of action without leave to amend.

## DISCUSSION

### A.   UNTIMELY DEMURRER

Carlton contends defendants' demurrer to the SAC was untimely because defendants had only 10 days after the filing of the SAC to file a demurrer. Dr. Pepper asserts Carlton failed to provide sufficient legal argument, and therefore this court may dismiss the issue. We choose to address the merits of the contention because Carlton provided some legal argument.

"'"'The interpretation of a statute is a question of law, which we review de novo. [Citation.]'" [Citation.]' [Citation.] 'Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them their usual and ordinary meaning. [Citation.] The statute's plain meaning controls the court's interpretation unless its words are ambiguous. If the plain language of a statute is

11

unambiguous, no court need, or should, go beyond that pure expression of legislative intent. [Citation.]' [Citation.] 'In doing so, however, we do not consider the statutory language in isolation. [Citation.] Rather, we look to the "entire substance of the statute" . . . in order to determine the scope and purpose of the provision . . . ." [Citation.] We avoid any construction that would produce absurd consequences.' [Citation.] It is a 'basic rule of statutory construction [that]: insofar as possible, we must harmonize code sections relating to the same subject matter and avoid interpretations that render related provisions nugatory.' [Citation.]" (*Bright v. 99cents Only Stores* (2010) 189 Cal.App.4th 1472, 1477-1478.)

California Rules of Court, rule 3.1320(j) provides, "Unless otherwise ordered, defendant has 10 days to answer or otherwise plead to the complaint or the remaining causes of action following: [¶] (1) The overruling of the demurrer; [¶] (2) The expiration of the time to amend if the demurrer was sustained with leave to amend; or [¶] (3) The sustaining of the demurrer if the demurrer was sustained without leave to amend."

Section 471.5, subdivision (a) provides, in relevant part, "If the complaint is amended, a copy of the amendments shall be filed . . . and a copy of the amendments or amended complaint must be served upon the defendants affected thereby. The defendant shall answer the amendments, or the complaint as amended, within 30 days after service thereof, or such other time as the court may direct, and judgment by default may be entered upon failure to answer, as in other cases."

California Rules of Court, rule 3.1320(j) provides a 10-day filing period, while the statute provides a 30-day filing period. The statute only applies when an amended

12

complaint is filed. Therefore, to read the statute and rule in harmony, the rule must be read to apply when an amended complaint is *not* filed. Thus, the 10-day rule would apply when a plaintiff is granted leave to amend but elects *not to amend*, and the statute's 30-day period would apply when a plaintiff *does amend.*

In this case, since Carlton did amend by filing the SAC, the statute's 30-day filing period applied. The SAC was mailed from within California to defendants' attorney on February 3, 2012. Service by mail from within California adds five calendar days. (§ 1013, subd. (a).) Therefore, service would have been February 8, 2012. February had 29 days in 2012. The first day is excluded (§ 12), which makes March 9 the 30th day. Defendants' demurrer to the SAC was filed on March 9, 2012. Accordingly, the demurrer was timely.

Carlton asserts the 10-day rule period applies when a complaint is amended following a demurrer, while the statute's 30-day period applies when a plaintiff elects to amend "in due course." Carlton's interpretation of the statute is problematic because the statute is not limited to particular situations. The plain language of the statute reflects that it applies when "the complaint is amended." (§ 471.5, subd. (a).) The statute takes precedence over the rule of court (*Pellegrini v. Weiss* (2008) 165 Cal.App.4th 515, 533), which explains why the rule of court cannot apply when an amended complaint is filed— the statute's 30-day rule has precedence. Thus, the rule only applies when an amended complaint is *not filed.*

B.    BREACH OF CONTRACT

Carlton contends the trial court erred by sustaining the demurrer as to the breach of contract cause of action in the SAC because the trial court overruled the demurrer to the breach of contract cause of action in the FAC, and no changes were made to the cause of action in the SAC.

Dr. Pepper asserts Carlton forfeited this issue by failing to raise it in the trial court. Our review of the record reflects Carlton did raise the issue in the trial court, and therefore the contention is not forfeited. Specifically, Foroozandeh said, "[T]he demurrer was overruled as to the second cause of action, breach of contract. Nothing has changed since then. So the Court has already ruled on that then."

In a prior opinion, this court, quoting another appellate court, wrote, "'The interests of all parties are advanced by avoiding a trial and reversal for defect in pleadings. The objecting party is acting properly in raising the point at his first opportunity, by general demurrer. If the demurrer is erroneously overruled, he is acting properly in raising the point again, at his next opportunity. If the trial judge made the former ruling himself, he is not bound by it. [Citation.] And, if the demurrer was overruled by a different judge, the trial judge is equally free to reexamine the sufficiency of the pleading. [Citations.]' (*Ion Equipment Corp. v. Nelson* (1980) 110 Cal.App.3d 868, 877 [First Dist., Div. Two].)" (*Pacific States Enterprises, Inc. v. City of Coachella* (1993) 13 Cal.App.4th 1414, 1420, fn. 3 [Fourth Dist., Div. Two]; see also *Herrera v. Federal Nat. Mortg. Assn.* (2012) 205 Cal.App.4th 1495, 1508-1509 [Fourth Dist., Div. Two].)

14

The Sixth District Court of Appeal has also concluded, "[A] party is within its rights to successively demur to a cause of action in an amended pleading notwithstanding a prior unsuccessful demurrer to that same cause of action. (*Pavicich v. Santucci* (2000) 85 Cal.App.4th 382, 389.)" (*Berg & Berg Enterprises, LLC v. Boyle* (2009) 178 Cal.App.4th 1020, 1036.)

Given the foregoing reasoning and rules from this court and others, the trial court could properly consider the demurrer to the entire SAC. When Carlton filed the SAC, he exposed himself to the possibility of a demurrer being filed and sustained to the entire SAC. Accordingly, we conclude the trial court did not err by sustaining the demurrer to the breach of contract cause of action.

Carlton cites the motion for reconsideration statute (§ 1008) and asserts a motion for reconsideration was defendants' exclusive path to have the trial court again consider a demurrer to the breach of contract cause of action. We would agree with Carlton, if he had not filed the SAC. However, by filing the SAC, Carlton opened the door to a demurrer to the entire SAC, including the breach of contract cause of action. The SAC superseded the FAC, which permitted a demurrer to the entire SAC to be filed. (See *Meyer v. State Bd. of Equalization* (1954) 42 Cal.2d 376, 384 ["It is well established that an amendatory pleading supersedes the original one, which ceases to perform any function as a pleading"].)

C.     REMAINING DEMURRER ISSUES

In Carlton's "Statement of the Case," in his Appellant's Opening Brief, he raises two other appellate issues related to the demurrer. The first of those two issues is that

15

"defendants' demurrer to the SAC went beyond the scope" of the trial court's ruling concerning the demurrer to the FAC. Carlton does not provide argument as to this issue, but we infer it is related to, if not identical to, the foregoing issue regarding the breach of contract cause of action. Since Carlton does not provide a header, legal citations, record citations, or analysis related to this issue, we deem it to be abandoned. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852; see also Cal. Rules of Court, rule 8.204(a)(1)(B)&(C).)

The second of the two issues is that the trial court erred "in sustaining the entire demurrer without leave to amend." It is unclear (1) if this is also related to the breach of contract issue discussed *ante*; (2) if it is about the substance of the allegations in the three causes of action; or (3) if is focused on leave to amend. Since Carlton does not provide a header, legal citations, record citations, or analysis related to this issue, we deem it to be abandoned. (*Benach v. County of Los Angeles*, *supra*, 149 Cal.App.4th at p. 852; see also Cal. Rules of Court, rule 8.204(a)(1)(B)&(C).)

D.     SANCTIONS

1.     *PROCEDURAL HISTORY*

a)     Substance

In March 2012, Dr. Pepper filed motions to compel supplemental responses from Carlton to (1) the first set of form interrogatories; (2) the first set of special interrogatories; (3) the first set of employment law form interrogatories; and (4) the first set of requests for production. In the motions, Dr. Pepper requested $2,555 for the attorneys' fees and costs Dr. Pepper spent preparing the motions to compel.

16

The following are two examples of Carlton's initial discovery responses: First, in the employment law form interrogatories, defendants asked, "Do you contend that the EMPLOYMENT relationship was not 'at will'? If so: [¶] (a) State all facts upon which you base this contention; [¶] (b) State the name, ADDRESS, and telephone number of each PERSON who has knowledge of those facts; and [¶] (c) Identify all DOCUMENTS that support your contention." Carlton responded, "Yes."

Second, also in the employment law form interrogatories, defendants asked, "Do you contend that the EMPLOYMENT relationship was governed by any agreement— written, oral, or implied? If so: [¶] (a) State all facts upon which you base this contention; [¶] (b) State the name, ADDRESS, and telephone number of each PERSON who has knowledge of those facts; and [¶] (c) Identify all DOCUMENTS that support your contention." Carlton responded, "Yes."

Carlton did not file any opposition to the motions to compel. The trial court addressed the motions to compel at the same hearing in which the court addressed defendants' demurrer to the SAC. During the hearing, defendants described Carlton's discovery responses as "appalling." Carlton said, "I believe that sanctions are not warranted. The facts are exactly what they are, and we intend to go to trial and prove it."

In its ruling, the trial court said, "I will indicate that I do not believe that the responses were appropriate. They were not just not appropriate, but they bordered on being wholly-inappropriate. [¶] The Court will grant the motion to compel for purposes of issuing sanctions. I will issue sanctions, a total amount of six hours, $200 per hour.

That's $1,200, plus filing fee." The court added $160 for the fees for filing four motions. The sanctions total was $1,360.

b)      Timeline

On September 16, 2011, Dr. Pepper mailed Carlton, from within California, the three different sets of interrogatories and request for production detailed *ante*. On November 4, 2011, Carlton sent Dr. Pepper his responses to the interrogatories, via Federal Express and the United States Postal Service from within California.

On November 28, 2011, Dr. Pepper's attorney's office sent an e-mail to Carlton's attorney's office requesting to postpone discovery. Specifically, the e-mail reflects, "We have a couple of deadlines coming up regarding discovery. Given that we have filed a demurrer and a motion to strike the first amended complaint, can we agree to postpone discovery until after the motions are heard?" On December 1, via e-mail, Carlton's attorney agreed to the request. On December 5, Dr. Pepper's attorney's office sent an e-mail confirming that the postponement included "any deadlines to file motions to compel." Carlton's attorney did not respond to say he agreed or disagreed with including motions to compel in the postponed deadlines.

The court held the hearing on defendants' demurrer to the FAC on January 5, 2012. On January 10, defendants' attorney (Hawxhurst) sent Carlton's attorney (Foroozandeh) a meet and confer letter. The letter referenced the prior postponement of discovery, including "any motions to compel," until after the hearing on the demurrer, which occurred on January 5. The letter discussed Carlton's "deficient discovery responses," and requested dates in late February when Carlton would be available for a

18

deposition.  The letter was 10 pages long and detailed the alleged deficiencies in Carlton's discovery responses.  Carlton's attorney "ignored" the letter.[4]  Dr. Pepper's attorney mailed the motions to compel to Carlton's attorney on March 19, 2012.  The motions to compel were filed at the court on the same day.

The record does not include a written opposition or objection to the motions to compel.  At the hearing on the motion, Carlton's attorney said he did not file an opposition to the motions to compel.  However, at the hearing, he verbally objected to the motions on the ground of timeliness.

2. <em>ANALYSIS</em>

a) <u>Untimely Motions</u>

Carlton contends the motions to compel were untimely (filed after the 45-day deadline) and moot (after the sustaining of the demurrer), and therefore, the trial court could not grant the sanctions requested in the motions.

Section 2030.300, subdivision (c), which concerns motions to compel supplemental interrogatory responses, provides:  "Unless notice of this motion is given within 45 days of the service of the verified response, or any supplemental verified response, or on or before any specific later date to which the propounding party and the responding party have agreed in writing, the propounding party waives any right to compel a further response to the interrogatories."

---

[4] There is nothing in the record reflecting a response, and in Carlton's Appellant's Opening Brief for this court, he writes that he "ignored" the letter.

19

Section 2031.310, subdivision (c), which concerns motions to compel supplemental responses to requests for production, provides: "Unless notice of this motion is given within 45 days of the service of the verified response, or any supplemental verified response, or on or before any specific later date to which the demanding party and the responding party have agreed in writing, the demanding party waives any right to compel a further response to the demand."

Assuming Carlton and Dr. Pepper's postponement of discovery included motions to compel, then discovery would have resumed on January 6 (after the January 5 demurrer hearing). Carlton's responses to the interrogatories and production requests were received in November, prior to the December agreement to postpone discovery. Nevertheless, assuming the 45-day motion clock began on January 6 (after the demurrer hearing), Dr. Pepper still missed the deadline to file its motions to compel. If January 6 is day one, then day 45 would be in February; Dr. Pepper did not file its motions to compel until March 19. Therefore, the motions were untimely because they exceeded the 45-day deadline.

Since the motions to compel were untimely, we now consider whether the sanctions request was also time-barred. Arguably, a sanctions request is not subject to the same 45-day deadline as motions to compel, since the plain language of the statutes only mentions motions to compel (not requests for sanctions) in relation to the 45-day deadline. (§ 2030.300, subd. (c) [motion to compel for interrogatories]; § 2031.310, subd. (c) [motion to compel for request for production]; § 2023.040 [request for sanctions]; see also *Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare*

20

*Consultants* (2007) 148 Cal.App.4th 390, 411 [45-day limit applies only to motions to compel, not requests for sanctions].)

Assuming, without deciding, that the sanctions request was timely, because the sanctions request was not subject to the same 45-day deadline, the issue becomes: Can monetary sanctions be awarded when the amount correlates with the attorney's fees and filing fees for untimely motions to compel? In other words, attorney's fees and filing fees were granted for preparing and filing untimely motions, and we now consider whether that award was reasonable.

We review a trial court's award of discovery sanctions for an abuse of discretion. (*Parker v. Wolters Kluwer U.S., Inc.* (2007) 149 Cal.App.4th 285, 297.) A trial court may order sanctions against a party who provides evasive discover answers, and those sanctions may include "the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct." (§§ 2023.030, subd. (a) & 2023.010, subd. (f).)

As set forth *ante*, the statutes impose strict 45-day deadlines for motions to compel. (§§ 2030.300, subd. (c), 2031.310, subd. (c).) If the deadlines are missed, the consequences are clear, the party "waives any right to compel a further response to the interrogatories" (§ 2030.300, subd. (c)) and "waives any right to compel a further response to the demand [for production]." (§ 2031.310, subd. (c).)

It was not reasonable for Dr. Pepper to file late motions to compel when the statutory scheme plainly reflects such motions could not be considered by the court. In other words, there was no basis for filing the motions because the motions could not accomplish anything. Therefore, Dr. Pepper's expenses for the motions to compel were

21

unreasonable. As a result, the trial court's award of sanctions related to motions to compel was unreasonable, because only reasonable expenses may be awarded, and the expenses related to the motions were not reasonable since the motions could not accomplish anything. (§ 2023.030, subd. (a).) Accordingly, we will reverse the portion of the judgment imposing discovery sanctions.

Dr. Pepper contends Carlton did not provide sufficient legal argument in his Appellant's Opening Brief, and therefore, this court may dismiss Carlton's argument. We conclude Carlton provided some legal argument, and therefore we choose not to dismiss the issue. (*Benach v. County of Los Angeles*, *supra*, 149 Cal.App.4th at p. 852; see also Cal. Rules of Court, rule 8.204(a)(1)(B)&(C).)

Dr. Pepper also notes Carlton did not file a formal opposition to the request for sanctions in the trial court. At the trial court hearing, Carlton objected on the basis of Dr. Pepper's motions being untimely. Since the timeliness issue was raised in the trial court, we conclude it has not been forfeited. (See *Dietz v. Meisenheimer & Herron* (2009) 177 Cal.App.4th 771, 799-800 [an objection in the trial court can preserve an issue for appeal].)

Next, Dr. Pepper contends the trial court did not abuse its discretion by imposing sanctions because Carlton's interrogatory responses were evasive, Carlton failed to meet and confer, and the amount of the sanctions was modest. Dr. Pepper's argument is not persuasive because discovery sanctions are not designed to punish; rather, they are designed to fix the problem created by the evasive responses. (*Parker v. Wolters Kluwer U.S., Inc.*, *supra*, 149 Cal.App.4th at p. 301.) Dr. Pepper's late motions to compel could

22

not have fixed Carlton's evasive responses, because the motions to compel were untimely and therefore Dr. Pepper waived its right to seek further responses. Dr. Pepper missed its opportunity to fix the problem. (§ 2030.300, subd. (c).) Therefore, discovery sanctions were not warranted, because the problem could no longer be fixed.

## DISPOSITION

The award of discovery sanctions is reversed. In all other respects, the judgment is affirmed. The parties are to bear their own costs on appeal.

CERTIFIED FOR PARTIAL PUBLICATION

MILLER
J.

We concur:

RAMIREZ
P. J.

KING
J.

23