Filed 9/15/15  Abuan v. Nationstar Mortgage CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MHARLOWE ABUAN et al., | |
| Plaintiffs and Appellants, | E061047 |
| v. | (Super.Ct.No. MCC1301305) |
| NATIONSTAR MORTGAGE LLC, | OPINION |
| Defendant and Respondent. | |

APPEAL from the Superior Court of Riverside County.  Gloria Trask, Judge. Affirmed.

Thomas W. Gillen for Plaintiffs and Appellants.

Law Offices of Les Zieve, John C. Steele and Stephen D. Britt for Defendant and Respondent.

Plaintiffs and appellants Mharlowe and Shannon Abuan are property owners who have defaulted on a real estate loan. They appeal from a judgment of dismissal, entered after the court sustained defendant and respondent Nationstar Mortgage LLC's demurrer to the first and second causes of action of their first amended complaint (FAC) without leave to amend. Plaintiffs argue that the court lacked jurisdiction to sustain the demurrer to the first cause of action and that they pled sufficient facts to support the first and second causes of action. We affirm.

I

FACTUAL AND PROCEDURAL BACKGROUND

We base our summary of the facts on the complaint and the real property records attached to defendant's request for judicial notice. (*Etheridge v. Reins Internat. California, Inc.* (2009) 172 Cal.App.4th 908, 914 [courts may consider matters which may be judicially noticed when reviewing a ruling on a demurrer].)[1] Plaintiffs purchased a property in Temecula in 2005 and secured a loan against the property in the amount of $458,550. In August 2005, plaintiffs entered into a Second Modification and Additional

---

[1] "[A] court may take judicial notice of the fact of a document's recordation, the date the document was recorded and executed, the parties to the transaction reflected in a recorded document, and the document's legally operative language, assuming there is no genuine dispute regarding the document's authenticity. From this, the court may deduce and rely upon the legal effect of the recorded document, when that effect is clear from its face." (*Fontenot v. Wells Fargo Bank*, *N.A.* (2011) 198 Cal.App.4th 256, 265.)

2

Advance Agreement with Bank of America, N.A.[2]  Plaintiffs subsequently defaulted on

their loan obligation.  On August 4, 2011, Recontrust Company, N.A. recorded a notice

of default and, on November 7, 2011, recorded a notice of trustee's sale.[3]

In September 2012, plaintiffs applied for a first loan modification with Bank of

America.  In October 2012, Bank of America gave plaintiffs a trial payment plan, which

required them to make three consecutive payments in the amount of $3,718.26 over the

next three months.  Because the trial payment amount was higher than their original

monthly mortgage payment, plaintiffs believed the amount was in error and they

"requested in writing that Bank of America provide an accounting."  Bank of America

allegedly told plaintiffs that they were only entitled to "such detailed accounting" if their

modification application was denied.

On February 27, 2013, following plaintiffs' participation in the trial payment plan,

Bank of America sent them "a letter of approval for a loan modification."  Plaintiffs

"appealed" this offer.

---

[2]  Bank of America, N.A., a named defendant in the original complaint and the FAC, is not a party to this appeal.  In their opening brief, plaintiffs state that Bank of America is no longer involved in this case.

[3]  Recontrust Company, N.A. is also a named defendant in the original complaint and the FAC, and also is not a party to this appeal.

On March 3, 2013, Bank of America recorded a notice of trustee's sale. On March 30, plaintiffs "submitted a new loan modification application" to Bank of America. On April 9, Bank of America denied plaintiffs' application. On May 5, a notice of trustee's sale was recorded.[4] In August 2013, plaintiffs received notice that defendant was taking over the servicing of plaintiffs' loan, effective September 1, 2013.

Plaintiffs filed their original complaint on September 9, 2013, asserting the following two claims against defendant: (1) a claim styled as an injunction and based on alleged violations of the Homeowner Bill of Rights (HBOR);[5] and (2) accounting. Defendant demurred to both claims, arguing that the HBOR claim was preempted by federal law and that the accounting claim failed because plaintiffs failed to allege that it owed them money. The court (Judge Bruce Disenhouse) overruled the demurrer to the HBOR claim on the ground that federal law did not preempt plaintiffs' claim. The court sustained the demurrer on the accounting claim on the ground that plaintiffs had not alleged that defendant owed them money.

---

[4] Plaintiffs allege that an unspecified "Defendant" recorded the notice.

[5] Civil Code sections 2920.5, 2923.4–2923.7, 2924, 2924.9–2924.12, 2924.15, 2924.17–2924.20.

Plaintiffs filed the FAC, the operative complaint, on January 6, 2014. To the

HBOR claim, they added various factual allegations regarding their attempts to obtain a

loan modification. To the accounting claim, they added allegations that they were

entitled to an accounting under "Federal regulations like RESPA" and that defendant had

"not responded to plaintiffs' QWR 'Qualified Written Request' as required under

RESPA." Defendant again demurred to both claims, arguing that plaintiffs had failed to

plead a violation of HBOR and failed to plead that it owed them money. The court

(Judge Gloria Trask) sustained the demurrer to both claims without leave to amend.[6]

On March 14, 2014, the court entered a dismissal in favor of defendant. Plaintiffs

appeal the judgment of dismissal.

II

ANALYSIS

1. *Jurisdiction*

As a preliminary matter, we dispense with plaintiffs' contention that because the

court previously overruled the demurrer to the HBOR claim in the original complaint, the

court lacked jurisdiction to consider whether the FAC alleged a viable HBOR claim.

Plaintiffs assert that defendant's exclusive path to obtaining a second review of the

---

[6] Plaintiffs' counsel did not appear at the hearing on defendant's demurrer and the court did not state its reasons for sustaining the demurrer.

5

HBOR claim was a motion for reconsideration under Code of Civil Procedure section 1008. They are mistaken.

Where a plaintiff adds new allegations to a claim, as plaintiffs did here, a defendant can demur to that claim regardless of whether the court overruled a previous demurrer to the same claim. (*Bennett v. Suncloud* (1997) 56 Cal.App.4th 91, 97.) Moreover, even if plaintiffs had not added new allegations to the HBOR claim, the court was nevertheless authorized to reexamine the sufficiency of plaintiffs' pleading. " 'The interests of all parties are advanced by avoiding a trial and reversal for defect in pleadings. The objecting party is acting properly in raising the point at his first opportunity, by general demurrer. If the demurrer is erroneously overruled, he is acting properly in raising the point again, at his next opportunity. If the trial judge made the former ruling himself, he is not bound by it. [Citation.] And, if the demurrer was overruled by a different judge, the trial judge is equally free to reexamine the sufficiency of the pleading. [Citations.]' " (*Carlton v. Dr. Pepper Snapple Group, Inc.* (2014) 228 Cal.App.4th 1200, 1210-1211 [Fourth Dist., Div. Two], quoting *Pacific States Enterprises, Inc. v. City of Coachella* (1993) 13 Cal.App.4th 1414, 1420, fn. 3 [Fourth Dist., Div. Two].) By filing the FAC, plaintiffs opened the door to a demurrer to the entire pleading, including the HBOR claim.

*2.* *Standard of Review*

A demurrer should be sustained when "[t]he pleading does not state facts sufficient to constitute a cause of action." (Code Civ. Proc., § 430.10, subd. (e).) "We independently review the superior court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense. [Citations.] We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded and matters of which judicial notice has been taken." (*Regents of University of California v. Superior Court* (2013) 220 Cal.App.4th 549, 558.) " 'We are not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not its rationale. [Citation.]' " (*Walgreen Co. v. City and County of San Francisco* (2010) 185 Cal.App.4th 424, 433.)

" 'If we determine the facts as pleaded do not state a cause of action, we then consider whether the court abused its discretion in denying leave to amend the complaint. [Citation.] It is an abuse of discretion for the trial court to sustain a demurrer without leave to amend if the plaintiff demonstrates a reasonable possibility that the defect can be cured by amendment.' " (*Bank of America, N.A. v. Mitchell* (2012) 204 Cal.App.4th 1199, 1204.)

*3.    HBOR Claim*

Plaintiffs argue that they have sufficiently pled a violation of HBOR because they pled that defendant engaged in "dual tracking."  We disagree.

HBOR "was enacted 'to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure.'  ([Civ. Code,] § 2923.4, subd. (a).)  Among other things, HBOR prohibits 'dual tracking,' which occurs when a bank forecloses on a loan while negotiating with the borrower to avoid foreclosure.  (See [Civ. Code,] § 2923.6.)"  (*Valbuena v. Ocwen Loan Servicing, LLC* (2015) 237 Cal.App.4th 1267, 1272.)

To prevent dual tracking, HBOR provides that if a borrower submits a *complete application* for a first lien loan modification, the mortgage servicer (among others) is precluded from recording a notice of default or notice of sale, or conducting a trustee's sale while the application is *pending*.  (Civ. Code, § 2923.6, subd. (c).)

Putting aside the issue of whether plaintiffs have sufficiently alleged that dual tracking even occurred in their case, their claim against defendant fails because it alleges that Bank of America, *not defendant*, engaged in dual tracking.  The FAC alleges that plaintiffs are entitled to "injunctive relief due to 'dual-tracking' by defendant BOA and defendant RECONTRUST."  Plaintiffs argue they have alleged that their "appeal" of

8

Bank of America's February 27 loan modification offer was pending when the notice of trustee's sale was recorded on March 3, 2013. The FAC alleges that defendant became the new loan servicer on September 1, 2013, after the alleged dual tracking violation. Plaintiffs have made no allegations that there were any additional efforts to foreclose on their property after defendant became their loan servicer.

In fact, if we assume the truth of the allegations in the FAC, defendant cannot have violated HBOR's dual tracking violation. "In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay," HBOR states that a loan servicer "shall not be obligated to evaluate applications from borrowers" who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification. (Civ. Code, § 2923.6, subd. (g).) By the time defendant became the loan servicer, Bank of America had already offered plaintiffs a loan modification. Plaintiffs did not accept this offer and instead chose to "appeal" it. Where a loan servicer has offered a borrower a first lien loan modification, HBOR's prohibition on recording a notice of default or trustee's sale is lifted if the borrower "does not accept [the offer] . . . within 14 days." (Civ. Code, § 2923.6, subd. (c)(2).) Accordingly, by the time defendant became the loan servicer, plaintiffs had already been afforded a fair opportunity to be evaluated for a first lien loan modification, and defendant was under no obligation under HBOR to continue loan

9

modification discussions with them.  In short, plaintiffs cannot allege that defendant engaged in dual tracking.

Plaintiffs assert they alleged that defendant failed to satisfy two *other* requirements of HBOR, i.e., establishing "an outreach program" and providing "a single point of contact."  We do not discuss these assertions because plaintiffs have provided no arguments or authority to support them.  An appellant bears the burden of demonstrating reversible error.  (*Fonteno v. Wells Fargo Bank, N.A.* (2014) 228 Cal.App.4th 1358, 1380.)  To meet that burden, an appellant must provide adequate briefing, containing argument, analysis and citations to pertinent authority.  (*Ibid.*)  " 'Where a point is merely asserted by counsel without any argument of or authority for its proposition, it is deemed to be without foundation and requires no discussion.' "  (*Colony Hill v. Ghamaty* (2006) 143 Cal.App.4th 1156, 1163.)

We affirm the court's ruling sustaining the demurrer to the HBOR claim.

*4.     Accounting Claim*

In order to state a claim for accounting, a plaintiff must allege that "a relationship exists between the plaintiff and defendant that requires an accounting, and that *some balance is due the plaintiff* that can only be ascertained by an accounting."  (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179, italics added.)  Plaintiffs do not allege that defendant owes them money, and therefore they did not state a claim for an accounting.

10

Plaintiffs argue that they are not required to allege that defendant owes them money because they are entitled to an accounting under the federal Real Estate Settlement Procedures Act (RESPA). (12 U.S.C. § 2601 et seq.) Plaintiffs are incorrect.

First, RESPA's remedy for violations is monetary damages (12 U.S.C. § 2605) and plaintiffs' prayer for relief asks the court for an "[e]quitable accounting of the[ir] alleged indebtedness." Plaintiffs may not seek an equitable remedy for violation of a statute that provides a legal remedy. (See, e.g., *Wilkison v. Wiederkehr* (2002) 101 Cal.App.4th 822, 830; *Taliaferro v. Taliaferro* (1956) 144 Cal.App.2d 109, 112 [a plaintiff is not entitled to seek an equitable remedy where there is an available and adequate legal remedy].)

Second, even if we assume plaintiffs could obtain an equitable remedy where the statute provides a legal remedy, plaintiffs have not pled a RESPA violation. In order to do so, they "must cite the specific provisions of RESPA that defendant [is] alleged to have violated." (*Kelley v. Mortg. Electronic Registration Systems* (N.D. Cal. 2009) 642 F.Supp.2d 1048, 1058.) The FAC contains no citations to RESPA provisions; it simply alleges that defendant "has not responded to plaintiffs' QWR 'Qualified Written Request' as required under RESPA." Plaintiffs have failed to state which provision of RESPA defendant's failure to respond violated and they have failed to allege facts to support a finding that a failure to respond even constitutes a RESPA violation. Additionally, many courts have held that RESPA "require[es] a showing of pecuniary damages in order to

11

state a claim." (See, e.g., *Allen v. United Financial Mortg. Corp.* (N.D. Cal. 2009) 660 F.Supp.2d 1089, 1097 ["This pleading requirement has the effect of limiting the cause of action to circumstances in which plaintiffs can show that a failure of notice has caused them actual harm"].) Plaintiffs have not alleged that defendant's failure to respond to their "Qualified Written Request" caused them pecuniary harm. They alleged only that they are "entitled to attorney fees and costs." This allegation does not salvage plaintiffs' claim. A " 'conclusory allegation that as a result of defendants' failure to respond, defendants are liable for actual damages, costs, and attorney fees' " is insufficient to state an allegation of actual pecuniary harm. (*Ibid.*)

Plaintiffs do not address these flaws in their accounting claim. Instead, they cite to various provisions of RESPA and offer the conclusory statement that "a reasonable reading of [those] authorities is that they establish a legal relationship that permits Appellants to state a cause of action for accounting." Plaintiffs have not met their burden of affirmatively demonstrating error in the court's ruling sustaining the demurrer to the accounting claim. (*Fonteno v. Wells Fargo Bank, N.A.*, *supra*, 228 Cal.App.4th at p. 1380.) We therefore affirm the court's ruling sustaining defendant's demurrer.

5.      *Leave to Amend*

It is plaintiffs' burden to demonstrate how a complaint could be amended to state a cause of action. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.)

12

Because plaintiffs do not discuss amendment, we conclude that the trial court did not abuse its discretion in denying leave to amend. (*Ibid.*)

## III

## DISPOSITION

We affirm the judgment. As the prevailing party, defendant shall recover its costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON      
J.

We concur:

McKINSTER     
     Acting P. J.

MILLER      
      J.