Filed 12/19/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| SF URBAN FOREST COALITION,<br><br>  Plaintiff and Appellant,<br><br>v.<br><br>CITY AND COUNTY OF SAN FRANCISCO et al.,<br><br>  Defendants and Respondents. | A155098<br><br>(San Francisco City & County<br>Super. Ct. No. CPF-18-516020) |

This appeal arises from a dispute between appellant SF Urban Forest Coalition (SF Urban) and respondents the City and County of San Francisco (City), San Francisco County Transportation Authority (SFCTA), Tilly Chang, and Cynthia Fong (jointly respondents) regarding whether the SFCTA is subject to the San Francisco Sunshine Ordinance of 1999 (S.F. Admin. Code, § 67.1, et seq.; Sunshine Ordinance). The trial court concluded the SFCTA is not an agency of the City and thus is not subject to the Sunshine Ordinance. On appeal, SF Urban disputes the trial court's holding. It further contends the SFCTA, even if it were a state agency, is subject to the Sunshine Ordinance pursuant to *City and County of San Francisco v. Regents of University of California* (2019) 7 Cal.5th 536. We disagree and affirm the judgment.

## I. BACKGROUND

**A.** *Relevant Statutory History*

**1.** *Creation of the SFCTA*

The Bay Area County Traffic and Transportation Funding Act (Pub. Util. Code, § 131000 et seq.; Bay Area Transportation Act) "was adopted in 1986 after the Legislature found that the Bay Area was experiencing 'serious traffic congestion and

transit mobility problems that threaten the economic viability of the area and adversely impact the quality of life therein.' ([Pub. Util. Code,] § 131001, subd. (a).) The Legislature addressed this problem by establishing a framework whereby 'the counties and cities within the nine-county San Francisco Bay area' could 'collectively develop and implement, on a county-by-county basis, near-term local traffic and transportation projects that responsibly and adequately deal with current and anticipated traffic congestion and transit mobility problems.' ([*Id.*] § 131001, subd. (c).) To this end, the [Bay Area Transportation] Act authorized the voters in each of the designated Bay Area counties to create a 'county transportation authority' in order to 'implement a retail transactions and use tax for the purpose of funding a local transportation expenditure plan . . . .' ([*Id.*] § 131001, subd. (e).)" (*Hayward Area Planning Assn. v. Alameda County Transportation Authority* (1999) 72 Cal.App.4th 95, 99, fn. omitted.) In the alternative, the voters could authorize the Metropolitan Transportation Commission[1] to perform this function. (Pub. Util. Code, § 131001, subd. (e).) Section 131240 of the Public Utilities Code sets forth the process for creating a "county transportation authority": "Upon approval of a retail transactions and use tax at an election conducted pursuant to Chapter 3 (commencing with Section 131100) in a county with an adopted county transportation expenditure plan that includes a provision for the creation of a county transportation authority, the authority shall be created at that election."

In 1989, voters approved Proposition B, entitled "Sales Tax for Transportation." (S.F. Voter Information Pamp. (Nov. 7, 1989) p. 23.) The text of Proposition B described its purpose as follows: "Pursuant to Division 12.5 of the Public Utilities Code, the San Francisco Transportation Committee has recommended that the Board of Supervisors

---

[1] The Metropolitan Transportation Commission was created by the Legislature "as a local area planning agency and not as a part of the executive branch of the state government," for the purpose of "provid[ing] comprehensive regional transportation planning for the region comprised of the City and County of San Francisco and the Counties of Alameda, Contra Costa, Marin, Napa, San Mateo, Santa Clara, Solano, and Sonoma." (Gov. Code, § 66502.)

2

submit to the voters of the City and County of San Francisco for their approval an ordinance which would, if so approved, create the [SFCTA], authorize the [SFCTA] to impose a one-half of one percent transactions and use tax for a period of twenty years to finance the transportation improvements set forth in the Transportation Expenditure Plan approved by the Board of Supervisors and to issue limited tax bonds in a total outstanding aggregate amount not to exceed $742,000,000.00." (S.F. Voter Pamp., *supra*, text of Prop. B, p. 30.) The proposition explained the imposition of the transactions and use tax was "in accordance with . . . Sections 131100 et seq. of the California Public Utilities Code, which directs the County Board of Supervisors to adopt the tax ordinance for voter approval, exercising the taxing power granted to the [SFCTA] in Public Utilities Code Section 131102 on behalf of said Authority." (S.F. Voter Pamp., *supra*, text of Prop. B, at pp. 30–31.) The proposition further noted its " 'Operative date' " was set "pursuant to Public Utilities Code Section 131105(a)," its " 'Effective date' " was set "pursuant to Public Utilities Code Section 131102(c)," the term of the tax was "pursuant to the authority granted by Section 131102(c) of the Public Utilities Code," and the SFCTA would have those powers "set forth in Division 12.5 (commencing with Section 131100) of the Public Utilities Code," including issuing limited tax bonds "pursuant to the provisions of California Public Utilities Code Sections 13109 et seq." (S.F. Voter Pamp., *supra*, text of Prop. B, pp. 30, 31, 32.)

### 2. *The Sunshine Ordinance*

The Sunshine Ordinance, enacted in 1993, is based on the principle that "[g]overnment's duty is to serve the public, reaching its decisions in full view of the public." (S.F. Admin. Code, § 67.1, subd. (a); see S.F. Voter Information Pamp. (Nov. 2, 1999) Text of Proposed Ordinance, p. 131.)

In 1999, voters amended the Sunshine Ordinance via passage of Proposition G. (S.F. Voter Information Pamp. (Nov. 2, 1999) Sunshine Ordinance Amendment, p. 119.) Proposition G noted the then-current Sunshine Ordinance "provides rules and procedures for public access to City meetings and records." (S.F. Voter Information Pamp., *supra*, Digest, p. 119.) It explained Proposition G would "clarify or extend the existing

3

ordinance" by expanding public access to various meetings and records. (*Ibid.*)
Proposition G clarified and expanded the Sunshine Ordinance's purpose, explaining,
"Elected officials, commissions, boards, councils and other agencies of the City and
County exist to conduct the people's business. The people do not cede to these entities
the right to decide what the people should know about the operations of local
government." (S.F. Voter Information Pamp., *supra*, Text of Proposed Ordinance,
p. 131; S.F. Admin. Code, § 67.1, subd. (b).) It further emphasized the importance of "a
strong Open Government and Sunshine Ordinance" and "[t]he right of the people to
know what their government and those acting on behalf of their government are doing
. . . ." (S.F. Voter Information Pamp., *supra*, Text of Proposed Ordinance, p. 131; S.F.
Admin. Code, § 67.1, subds. (e), (d).)

**B.** *Procedural History of the Pending Dispute*

As relevant to the issues raised in this appeal, SF Urban submitted two public
records requests to the SFCTA under the California Public Records Act (Gov. Code,
§ 6250 et seq.; CPRA) and the Sunshine Ordinance. In response to the records request
under the Sunshine Ordinance, the SFCTA stated it " 'does not fall under the City's
Sunshine Ordinance . . . .' "

SF Urban subsequently filed a petition for writ of mandamus (petition) against
respondents. The petition alleged the SFCTA is a "City agency and executive
department" subject to the Sunshine Ordinance. The petition sought disclosure of certain
records and a declaration that the SFCTA "is a part of the City and County of San
Francisco and subject to the provisions of the San Francisco Sunshine Ordinance . . . ."

After the parties resolved the outstanding records request issue, respondents
argued the remainder of the petition seeking declaratory relief was moot. The trial court
concluded the request for declaratory relief was not moot "due to the SFCTA's position
that it is not subject to the Sunshine Ordinance, which is sufficient to establish an actual
controversy per [Code of Civil Procedure section] 1060."

The court conducted a hearing on whether the Sunshine Ordinance applied to the
SFCTA. Following that hearing, it concluded the SFCTA is an agency of the State of

4

California and exempt from the Sunshine Ordinance. The court further held "the language of the Sunshine Ordinance makes clear that the SFCTA is not covered by the Ordinance." Judgment was entered dismissing the petition with prejudice, and SF Urban timely appealed.

## II. DISCUSSION

SF Urban raises two arguments in support of its position that the SFCTA is subject to the Sunshine Ordinance. First, it asserts the SFCTA was created by San Francisco voters and thus is not an agency of the state. Second, it contends the recent California Supreme Court opinion in *City and County of San Francisco v. Regents of University of California*, *supra*, 7 Cal.5th 536 (*Regents*), requires a finding that the SFCTA, even if it were a state agency, is subject to the Sunshine Ordinance. We address each argument in turn.

### A. *Whether the SFCTA Is an Agency of the City*

SF Urban argues the SFCTA must be an agency of the City because it was created by local voters via Propositions B and K rather than directly by the California Legislature, its functions are constrained to those outlined in the county transportation expenditure plan, and its members are elected officials appointed by the City.

As a preliminary matter, we note SF Urban appears to conflate the concept of a "local agency" with being an agency of the City. While the SFCTA may be a "local agency," we do not conclude it is an agency or division of the City. Numerous statutes have differentiated between local entities and the cities and counties they serve. For example, section 53090 et seq. of the Government Code governs the regulation of local agencies by counties and cities. In doing so, it defines " 'Local agency' " as "an agency of the state for the local performance of governmental or proprietary function within limited boundaries" and specifically excludes "the state," "a city," and "a county" from the definition. (Gov. Code, § 53090.) Other statutory provisions include both cities and counties and other local entities within the definition of "local agency." For example, the CPRA defines " 'Local agency' " as "a county; city, whether general law or chartered; city and county; school district; municipal corporation; district; political subdivision; or

any board, commission or agency thereof; other local public agency; or entities that are legislative bodies of a local agency pursuant to subdivisions (c) and (d) of Section 54952." (Gov. Code, § 6252, subd. (a).) Of note, "local agency" is not merely defined as a city, county, city and county, or any board, commission or agency thereof. Rather, it includes a host of other local entities, including "municipal corporation," "district," and "other local public agency." Similarly, division 2 of title 5 of the Government Code, entitled "Cities, Counties, and Other Agencies," defines " 'local agency' " as "a county, city, whether general law or chartered, city and county, town, school district, municipal corporation, district, political subdivision, or any board, commission or agency thereof, or other local public agency." (Gov. Code, § 54951.)

Such definitions illustrate local public agencies are distinct from the cities and counties they serve. In *Torres v. Board of Commissioners* (1979) 89 Cal.App.3d 545 (*Torres*), a case relied upon by SF Urban, the court addressed whether the Housing Authority of Tulare County, created pursuant to Health and Safety Code section 34200 et seq., qualified as a "local agency" subject to the Ralph M. Brown Act. (*Torres*, at p. 547.) When analyzing the statutory definition of a local agency under the Brown Act, the court explained, "Every word in a statute is to be given meaning if possible. The term 'municipal corporation' is broader than the term 'city,' particularly when the term 'city' already appears in the applicable statute. [Citations.] In order to give meaning to the term 'municipal corporation' in Government Code section 54951 we hold that such term is not restricted to its technical sense of a 'city,' general law or charter, but rather includes such entities as housing authorities." (*Torres*, at pp. 549–550.)

Here, SF Urban's presumption that a "local agency" is necessarily an agency of a city or county is mistaken.[2] Both *Torres* and the Government Code demonstrate the phrase "local agency" includes other entities apart from cities and counties. To hold

---

[2] We further note SF Urban does not assert the Metropolitan Transportation Commission is an agency of any city or county within the region it serves despite its designation as a "local area planning agency." (See Gov. Code, § 66502.)

6

otherwise would render the remainder of the statutory definitions of "local agency" superfluous. (See *In re R.C.* (2019) 39 Cal.App.5th 302, 307 ["We 'give meaning to every word in [the] statute and . . . avoid constructions that render words, phrases, or clauses superfluous.' "].)

We next turn to the features of the SFCTA, which SF Urban alleges evidence the SFCTA is an agency of the City. First, the members of the SFCTA are the elected members of the City's board of supervisors. However, "[w]ell-established and well-recognized case law holds that the mere fact that the same body of officers acts as the legislative body of two different governmental entities does *not* mean that the two different governmental entities are, in actuality, one and the same." (*Pacific States Enterprises, Inc. v. City of Coachella* (1993) 13 Cal.App.4th 1414, 1424; see also *Vanoni v. County of Sonoma* (1974) 40 Cal.App.3d 743, 750–751 ["Although the Sonoma Water District may be performing functions traditionally performed by counties, appellants have offered no evidence, beyond the fact that the same individuals sit on the governing boards of both the county and the water district, that Sonoma County exercises actual control over the actions of the district. The fact that the same individuals are members of both boards is not sufficient to establish that control."]; *Rider v. City of San Diego* (1998) 18 Cal.4th 1035, 1044 ["we have never held that control by itself establishes the identity of two separate governmental entities. . . . [¶] . . . Because the Financing Authority has a genuine separate existence from the City [citation], it does not matter whether or not the City 'essentially controls' the Financing Authority."]; *City of Bakersfield v. West Park Home Owners Assn. & Friends* (2016) 4 Cal.App.5th 1199, 1212 [upholding trial court conclusion that Bakersfield Public Benefit Corporation was not a "shell entity" of the City of Bakersfield; "if the [Bakersfield Public Benefit] Corporation has a 'genuine separate existence' it does not matter what sort of control the City has over the Corporation"].)

Next, SF Urban argues the SFCTA must be an agency of the City because it was created by voters in the City and is limited to operating within the City's geographic region. These features, however, are common to local agencies created by the state. In

7

*Golden Gate Bridge etc. Dist. v. Luehring* (1970) 4 Cal.App.3d 204, 215, the Golden Gate Bridge and Highway District "was formed pursuant to the statute by vote of the people residing within its boundaries." It was initially funded through taxes on property owners within the district before bonds could be sold. (*Id.* at p. 206.) As the district's revenues from bridge tolls increased and it had sufficient funds to meet its bonded indebtedness, the petitioners sought to have the district " 'reimburse' " the counties for the taxes collected from their taxpayers. (*Id.* at p. 207.) The court concluded such a transfer of funds from the district to the counties within its boundaries would amount to an unconstitutional "gift" of public funds. (*Id.* at pp. 209, 215.) Specifically, it explained "the Golden Gate Bridge and Highway District is not a joint powers enterprise. It was formed pursuant to the statute by vote of the people residing within its boundaries and has earned revenues in the performance of its own special purpose of 'bridging the Golden Gate.' To permit diversion of a portion of those revenues into the general funds of the counties would be contrary to the apparent purposes of article XIII, section 25, of the Constitution." (*Id.* at p. 215.)

Other agencies operating within distinct geographic limits have likewise been found to be separate entities from the cities and counties within those same geographic boundaries. (See, e.g., *Pacific States Enterprises, Inc. v. City of Coachella*, *supra*, 13 Cal.App.4th at p. 1424 ["Redevelopment agencies are governmental entities which exist by virtue of state law and are separate and distinct from the communities in which they exist."]; *Condit v. Solvang Mun. Improvement Dist*. (1983) 146 Cal.App.3d 997, 1000 ["[Solvang Municipal Improvement District] is neither a city nor a county but is a special governmental district created by a special act of the State Legislature."]; *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 233 ["petitioner is an agency of the state formed pursuant to general law (Pub. Util. Code, § 180000 et seq.) for the local performance of a governmental function (raising tax revenues) within limited boundaries (Santa Clara County)"].)

None of the authority cited by SF Urban supports its position that the SFCTA is an agency of the City. Rather, those cases held the entities at issue were versions of

8

municipal corporations (*Merchants Bank v. Escondido Irr. Dist.* (1904) 144 Cal. 329, 334), other local public agencies (*Torres*, *supra*, 89 Cal.App.3d at pp. 549–550), or local entities (*Lynch v. San Francisco Housing Authority* (1997) 55 Cal.App.4th 527, 541).[3] None of these cases held that such entities are part of the cities or counties in which they operate.

Moreover, the structure established by the Bay Area Transportation Act, which authorized creation of the SFCTA, indicates the transportation authorities created thereunder are distinct from the cities and counties they serve. Notably, the Bay Area Transportation Act sets forth the process by which counties may develop transportation expenditure plans and the requirements for the contents of such plans. (See Pub. Util. Code, §§ 131050–131057.) As part of that approval process, the Metropolitan Transportation Commission must review and approve the draft transportation expenditure plan "before submittal to the board of supervisors and local governments for adoption." (*Id.*, § 131052.) The Bay Area Transportation Act also sets forth the specific criteria by which the Metropolitan Transportation Commission may approve or reject the draft transportation expenditure plan. (Pub. Util. Code, §§ 131053, 131054.) It also contains extensive provisions related to imposition of a retail transactions and use tax, issuance of bonds, the information required to be included in any proposition seeking approval of such taxes and bonds, and the administration, powers, and functions of any created county transportation authority. (*Id.*, §§ 131100–131122, 131240–131304.)

Finally, our interpretation also is in accord with the City's own understanding of its executive branch structure. Notably, the City joined the SFCTA's brief in this matter

---

[3] SF Urban also cites *Hayward Area Planning Assn. v. Alameda County Transportation Authority* (1999) 72 Cal.App.4th 95 in support of its position. That case, however, addressed whether the Alameda County Transportation Authority could implement a highway extension project that contained a significantly different route than the one outlined in the county transportation expenditure plan. (*Id.* at p. 98.) The court concluded the highway extension must comply with the route identified in the expenditure plan. (*Id.* at p. 107.) The court never addressed whether the Alameda County Transportation Authority was an agency of the county.

9

"on all grounds, including that the trial court's judgment should be affirmed." The City also does not list the SFCTA as a department or other City entity in either its Charter or on its website. (See generally S.F. Charter, § 4.100 et seq.; <http://www.sf.gov/departments> [as of December 19, 2019].)

In sum, neither applicable case law nor the structure of the SFCTA or the provisions of the Bay Area Transportation Act indicate the SFCTA is an agency of the City. While the SFCTA may be classified as a local agency based on the scope of its functions, it remains an agency of the state.

## B. *Whether the Sunshine Ordinance Applies to the SFCTA*

SF Urban next argues the California Supreme Court's recent decision in *Regents*, *supra*, 7 Cal.5th 536, demonstrates municipal ordinances, such as the Sunshine Ordinance, may apply to state entities, such as the SFCTA. However, the analysis set forth in *Regents* is only applicable if the City is attempting to subject the SFCTA to the Sunshine Ordinance. In this instance, we conclude the scope of the Sunshine Ordinance does not extend to the SFCTA.

As discussed in part I.A.2., *ante*, voters enacted the current version of the City's Sunshine Ordinance via passage of Proposition G. The materials presented to the voters indicated Proposition G's purpose was to enhance access to the City's operations. (*Traders Sports, Inc. v. City of San Leandro* (2001) 93 Cal.App.4th 37, 49 [court may consider ballot materials to ascertain the voters' intent].) For example, the digest explained the then-current Sunshine Ordinance "provides rules and procedures for public access to City meetings and records." (S.F. Voter Information Pamp. (Nov. 2, 1999) Digest, p. 119.) It further explained Proposition G would "clarify or extend the existing ordinance" by (1) providing greater access to meetings either conducted by the mayor, City department heads, or City employees; (2) providing greater access to meetings attended by City representatives; (3) requiring compliance with the Sunshine Ordinance from groups that contribute money to the City; (4) creating detailed, public calendar listings for the mayor and City department heads; and (5) requiring the City to create and maintain certain records. (S.F. Voter Information Pamp., *supra*, Digest, p. 119.) The

10

proposed changes also prohibited the City from asserting certain bases for withholding records. (*Ibid.*) All of these changes directly involve City-related activities. The argument in support of Proposition G specifically notes: "What Prop. G will do is make *city government* more accessible and accountable to the San Franciscans it's supposed to serve." (S.F. Voter Information Pamp., *supra*, Proponent's Argument in Favor of Prop. G, p. 120, italics added.) This city-specific intent is emphasized in the "Findings and Purpose" section of the Sunshine Ordinance. That section focuses on access to the business conducted by "Elected officials, commissions, boards, councils and other agencies *of the City and County* . . . ." (S.F. Admin. Code, § 67.1, subd. (b), italics added.)

Undoubtedly, article II of the Sunshine Ordinance contains a broad definition of " 'Policy Body,' " which could be interpreted to include the SFCTA. (S.F. Admin. Code, § 67.3, subd. (d)(3) [" 'Policy Body' shall mean: [¶] . . . [¶] . . . Any board, commission, committee, or other body created by ordinance or resolution of the Board of Supervisors."].) Article III of the Sunshine Ordinance likewise articulates a broad scope, encompassing "Every person having custody of any public record or public information . . . ." (S.F. Admin. Code, § 67.21, subd. (a).) However, "we must read every statute, ' "with reference to the entire scheme of law of which it is part so that the whole may be harmonized and retain effectiveness." ' " (*Chaffee v. San Francisco Library Commission* (2004) 115 Cal.App.4th 461, 468.) The Sunshine Ordinance, as a whole, indicates it was not intended to include entities such as the SFCTA.[4] This interpretation is supported by section 67.32 of the Sunshine Ordinance, which aims to "enact open meetings" with other "local, state, regional and federal agencies and institutions," including "the San Francisco

_____

[4] The manner in which the SFCTA was created also suggests it is beyond the scope of the "policy body" definition. While the SFCTA was arguably "created by ordinance," for all practical purposes the SFCTA was created by both statute and ordinance. Proposition B states its creation of the SFCTA was "Pursuant to Division 12.5 of the Public Utilities Code." (See part I.A.1., *ante*; accord Pub. Util. Code, § 131007 [" 'County transportation authority' means any authority created pursuant to this division . . . ."].)

11

Transportation Authority."  By encouraging such open meetings, this section presumes the listed agencies, including the "San Francisco Transportation Authority," are not subject to the Sunshine Ordinance.

The provisions setting forth the administrative appeal process further indicate the Sunshine Ordinance is limited to City agencies.  Subdivision (d) of section 67.21 provides:  "If the custodian refuses, fails to comply, or incompletely complies with a request described in (b), the person making the request may petition the *supervisor of records* for a determination whether the record requested is public. . . . Upon the determination by the supervisor of records that the record is public, the supervisor of records shall immediately order the custodian of the public record to comply with the person's request."  (S.F. Admin. Code, § 67.21, subd. (d), italics added.)  The " 'Supervisor of records' " is defined as the "City Attorney."  (*Id.*, § 67.20, subd. (c).)  This administrative review process is only reasonable if the Sunshine Ordinance is limited to City agencies.  We are unaware of any authority that would empower a city to determine whether records of a state agency are public and whether those records must be produced to third parties.

While the Sunshine Ordinance should be broadly construed (Cal. Const., art. I, § 3, subd. (b)(2)), we cannot reasonably interpret it to include an entity, such as the SFCTA, which its provisions expressly appear to exclude.  Nor can we construe it in a manner that would allow a city to override a state agency's determination on whether its internal documents were subject to disclosure.  Accordingly, we find the scope of the Sunshine Ordinance is limited to the City and is not intended to apply to the SFCTA.

In light of this holding, we find *Regents*, *supra*, 7 Cal.5th 536, inapplicable.  In *Regents*, the California Supreme Court addressed whether San Francisco could impose its parking tax on drivers parking in lots owned by the University of California and require the university to collect those taxes on its behalf.  (*Id.* at p. 541.)  The court discussed *In re Means* (1939) 14 Cal.2d 254 and *Hall v. City of Taft* (1956) 47 Cal.2d 177, explaining that those cases "tell us that in the event of a conflict between a municipality's view of, say, how best to build a parking lot, and the state's ability to decide for itself what sort of

12

parking lot would best serve its needs, the state's prerogatives must prevail.  But the *Means-Hall* cases do not hold that state agencies are categorically beyond the reach of any local law, no matter how inobtrusive, including one that does no more than require assistance in collecting a concededly valid tax on third parties." (*Id.* at p. 554.)  To the contrary, the court emphasized "we must consider and pragmatically weigh the substantive constitutional interests on both sides of the balance." (*Id.* at p. 555.)  The court concluded the city's interest in collecting tax revenue outweighed the University of California's administrative burden in collecting the tax on third parties. (*Id.* at p. 560.)

Here, however, we need not determine whether the SFCTA is "beyond the reach" of the Sunshine Ordinance by "weigh[ing] the substantive constitutional interests on both sides" because the Sunshine Ordinance does not seek to regulate agencies such as the SFCTA.  Rather, the Sunshine Ordinance's scope is limited to the City.  And we decline to speculate on whether the Sunshine Ordinance could regulate the SFCTA if it is amended to encompass such agencies in the future.  (See *Wilson v. Transit Authority* (1962) 199 Cal.App.2d 716, 722–724 [declaratory relief is not available to provide judicial answers to theoretical, hypothetical or academic questions].)

## III.  DISPOSITION

The judgment is affirmed.  Respondents may recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)

_____

Margulies, Acting P. J.

We concur:


_____

Banke, J.


_____

Sanchez, J.

A155098

Trial Court:   San Francisco City and County Superior Court

Trial Judge:   Hon. Harold Kahn

Counsel:

Charles K. Seavey and Allen Grossman for Plaintiff and Appellant.

Nossaman, Stanley S. Taylor, III, Carl L. Blumenstein and Jennifer L. Meeker for Defendants and Respondents San Francisco County Transportation Authority, Tilly Chang, and Cynthia Fong.

Dennis J. Herrera, City Attorney and Wayne K. Snodgrass, Deputy City Attorney for Defendant and Respondent City and County of San Francisco.